Fugate et al v. Pierce.

---

JAMES FUGATE, MARTHA J. HUGHES, *et al.*, Defendants in Error, *v.* HUDSON PIERCE, Plaintiff in Error.

1. *Witnesses — Testimony of wife when a substantial party to suit — Construction of statute.*— It was not the intent of the statute concerning witnesses (Wagn. Stat. 1373, § 5) to exclude the testimony of a wife when she was a substantial party to the suit.

2. *Limitations — Adverse possession, what necessary to constitute.*— A title under the statute of limitations is as good as any other; but, in order to create such title, the possession must be open and notorious, and continuing under claim of ownership. It must be such as to notify the real owner, at least as against him, of the possession and claim; and where continued for the statutory period, the title vests, and if the claimant dies in possession before the title becomes perfect, a continued like possession by his heirs will perfect it.

3. *Limitations — Statute of 1847 — Claims under — There must be ten years' possession subsequent to 1847.*— One entering upon land prior to the limitation act of 1847, and relying upon that act, must show not only ten years' possession, but possession for ten years subsequent to the passage of the act.

4. *Limitations — Adverse possession — Possession of part, with claim to the whole.*— One who takes actual, adverse possession under color of title, is held to be possessed of the contiguous land covered by the instrument under which he claims; but such possession is never based upon a claim merely. There must be a deed purporting to convey the whole, or some proceeding or instrument giving color and defining boundaries, as well as actual possession of a part. And this doctrine is not contrary to a proper interpretation of section 5, article I, of the limitation act of 1847. (See R. C. 1845, p. 1046.)

5. *Ejectment — Inconsistent defenses.*— In ejectment, defendant cannot deny the title of the grantor of plaintiff, and yet claim as purchaser under his grantor. Such defenses are inconsistent, and, when entering upon his proof, defendant may be compelled to elect between them.

Fugate et al. v. Pierce.

6. *Lands and land titles — Tenancy in common—Adverse possession—Ouster.* —The possession of land held by one tenant in common is construed as the possession of all, unless by his denial of their right, or by holding adversely, his co-tenants are ousted.

7. *Possession, adverse — What sufficient against a stranger.* — Mere possession, although for less than ten years, and although the entry were tortious, is sufficient against a stranger.

8. *Lands and land titles — Abandonment.* — The mere leaving of premises, after destruction of the improvements thereon, *animo revertendi,* is not an abandonment. But otherwise if they are wholly given up with no intention of reclaiming them.

*Error to Caldwell Circuit Court.*

*J. D. S. Cook,* for plaintiff in error.

I. Thomas J. Hughes was an incompetent witness. (1 Phil. Ev. 76, 82; 1 Cow. & Hill's Notes, note 151; 1 Greenl. Ev., §§ 334–5, 341, and cases cited.) The statute provides for and removes the objection which would arise from his being a party, but says nothing to relieve his disability as her husband. (Gen. Stat. 1865, p. 586, § 1; *id.* 587, § 5.)

II. The title of James Fugate and that of his heirs was limited to the property to which he had color of title, and actually occupied by him, to-wit: the "mill-site" and nothing else. His possession was under a deed to the "mill-site," and his actual occupation was on the "mill-site" only. (See 34 Mo. 194; De Graw v. Taylor, 37 Mo. 310; Johnson v. Prewitt, 32 Mo. 553, 557; Ang. Lim. 416–21, ch. 31, § 15; *id.* 423–5, §§ 16, 17; *id.* 428, § 21; Barr v. Gratz, 4 Wheat. 213.)

III. When a prior possession has been abandoned, as in this case, it cannot be afterward used to found an action of ejectment. (Smith v. Lorillard, 10 Johns. 338; 16 Johns. 314; Ang. Lim. 399.)

*Johnson, Dixon & Hoskinson,* for defendants in error.

Thomas J. Hughes was a competent witness. Sections 5 and 8, and the provisions in section 1 of the statute concerning witnesses, specify who are incompetent. All others are competent. The wife is only admitted in exceptional cases, but the husband is nowhere classed among those incompetent. So far as he is

concerned, the law attaches no such consequence to the marital relation.    (Thomas *et al.* v. Babb *et al.*, 45 Mo. 384.)

Their possession of part, with their claim of owning and possessing all, and their exercise of the ordinary act of ownership over all, was good against all but the holder of the legal title. The defendant invades their possession, and then says they ought to recover only the parts of which they held actual possession. The presumptions which he invokes to maintain his possession are only indulged in favor of the real owner, and are not available in favor of a trespasser and intruder.

BLISS, Judge, delivered the opinion of the court.

The plaintiffs are heirs of James Fugate, deceased, and sought to recover possession of two eighty-acre tracts of land near Far West, in Caldwell county, of which they claim their ancestor died seized.    They showed no title in him, but relied upon his possession under color and claim of title.    The defendants denied possession except of a small portion, and claim that that was abandoned, and that the interest of one of the plaintiffs had been sold under execution.    The plaintiffs recovered judgment, and defendant charges the following errors :

1.    The court refused a continuance asked to enable him to obtain the testimony of one Lillard, the sheriff who sold and conveyed the interest of one of the plaintiffs to his grantor.    The application fails to show due diligence.    The summons was served in May, 1868, and the trial was had in February, 1870.    At the August term, 1869, the cause was continued on the application of defendant, and no effort had been made to obtain the testimony of Lillard, who resided within the State until shortly before the term at which the case was tried.    The motion shows that notice was then given and sent to the witness, with directions to go before an officer and give his deposition, but defendant never received his testimony.    Why this delay ?    It will never do, after continuances already had, and especially where there are only two terms a year, to encourage a delay of preparation until the close of vacation, with the expectation of a new continuance.    It does not appear why Lillard's deposition was not for-

warded. Perhaps no fees were sent; perhaps the witness declined to volunteer his testimony, or perhaps he had none to give. No legal and proper effort was made to obtain it, and the court did right in overruling the motion.

2. Thomas J. Hughes and wife are among the plaintiffs, and claim an interest in the property through Mrs. Hughes, a daughter of James Fugate, deceased. Hughes was sworn as a witness and his testimony was objected to.

Although at common law the husband and wife cannot be witnesses for or against each other,. yet the husband should not be excluded in this case for two reasons: First, James C. Fugate has an interest, and has a right to the testimony of Hughes. Hughes himself has an interest, and is seeking possession jointly with Fugate. Though his claim is in right of his wife, it is really his own claim. Second, the statute makes him a witness. The common law excluded the testimony of husband and wife for each other on the ground of interest. The other ground—that of public policy—applies when one is called to testify against the other. Phillips says: "They cannot be witnesses for each other, because their interests are absolutely the same; they cannot be witnesses against each other, because this is inconsistent with the relation of marriage." (1 Phil. Ev. 78.) Gilbert (Gilb. Ev. 252), Taylor (p. 878) and Blackstone (p. 1443) give the same reasons for the exclusion. They were not permitted to testify in support of the claims of each other, because parties and all others interested were excluded and could not be called upon against each other, because it might endanger the peace, unity and mutual confidence so necessary in the marriage relation. This last consideration is analogous to that which forbids the disclosure of confidential professional communications. But the reason for excluding them in the first case no longer exists, for the statute now provides that no person shall be disqualified as a witness in a suit " by reason of his interest in the event of the same as a party or otherwise." (Gen. Stat. 1865, ch. 144, § 1; Wagn. Stat. 1372.) It would seem from this language that the husband and wife might in all cases testify for each other whether parties or not, and such has been the holding of the Supreme Court of

Connecticut, where the statute is almost identical with ours.    In Merriman v. H. & N. H. R.R Co., 20 Conn. 354, the wife, though not a party, was admitted as a witness in favor of the husband; the court, by Stoves, J., holding that the statute removed the disability; and in Lucas v. The State, 23 Conn. 18, it is held that the husband and wife may be witnesses for each other.    The Supreme Court of New York holds that the husband and wife are competent witnesses in their own behalf when co-plaintiffs or co-defendants (Marsh v. Patton, 30 Barb. 506; Hooper v. Hooper, 43 Barb. 292), though I do not find that the Court of Appeals has passed upon the question, and the language of the New York statute differs somewhat from that of Missouri.    The general question has not come directly before this court, though cases have arisen where the common-law doctrine has been greatly modified.

In Tingley *et al.* v. Cowgill, 48 Mo. 291, the wife, with the husband, was a party to the proceeding to set aside the will of her ancestor.    In that case she was held to be a competent witness, but chiefly because she, and not the husband, was the real party in interest.    The reasoning of the judge delivering the opinion may not quite meet the case at bar, where the husband seeks the possession, and the wife seeks the recognition of her title; but the facts are very similar, and the case can hardly be distinguished in principle.    I think a fair construction of the statute should admit the testimony of necessary parties to the record in their own favor and that of other parties, notwithstanding their interest, as parties or otherwise, as in case of husband and wife.

It may be said that inasmuch as section 5 of the Witness Act expressly permits a married woman to testify in certain cases when her husband is a party, whether joined or not, by fair inference it should be held to recognize her exclusion in other cases. (Hardy v. Matthews, 42 Mo. 406.)    There is force in this view, yet, as we have seen, it is held not to have this effect when she is the chief party in interest; and by its terms the section can have no force against the husband, only as recognizing the fact that the common law upon the subject is not wholly superseded.    In view of this recognition we may not, perhaps, go as far as the

Connecticut courts have gone, yet it would be contrary to the spirit of the statute to exclude a substantial party,because the wife or husband is also a party and has rights to be protected.

3. Exceptions were taken to the instructions given, and to the refusal to give others, upon the question of possession and its effect. A saw-mill was located upon the land, and the plaintiff's ancestor, James Fugate, held from one Havens some kind of a deed, now lost, for about twenty acres, embracing the mill-site. It cannot be now shown whether this last deed was a perfect instrument so as to convey title if held by Havens, but it is not denied that it was sufficient to give color. It is in evidence that decedent claimed the whole of the two eighty-acre lots sued for, and that the quarter-section lines dividing them ran through the improvements, which were all on the mill-site property; that he claimed to hold the remainder by some tax sale, though whether he had a tax deed does not appear; that he offered to sell the whole, and actually sold it once, but took the land back because he could not make a satisfactory title except to the twenty acres; that he made no inclosures outside of the twenty acres, but exercised acts of ownership over the land, such as cutting wood for his house and logs for his mill. The purchase from Havens was in 1843 or 1844, and Fugate died in 1852. His administrator, by direction of the Probate Court, rented out the property for several years, when the mill was swept away by a flood.

Fugate's family seems to have become scattered; the two eldest sons went to California, and have not been heard from since, and when the actual occupation of the premises ceased does not clearly appear; but in 1865 one Lupton, now defending, purchased the pretended interest of one James to an undivided portion of the premises, and put in the defendant as his tenant.

Upon these facts the court gave elaborate instructions on behalf of the plaintiffs, in regard to their title under the statute of limitations, and refused some twenty others asked for on behalf of defendant; but I will not notice them in detail, for the law upon the subjects embraced can be much more briefly given.

A title under the statute of limitations is as good as any other (Nelson v. Brodhack, 44 Mo. 596), but in order to create such

title the possession must be open, notorious, continuing, and under claim of ownership. It must be such as to notify the real owner, at least as against him, of the possession and claim; and when continued for the statutory period the title vests; and if the claimant dies in possession before the title becomes perfect, a continued like possession by his heirs will perfect it. And if the land shall be rented out by the administrator under the statute, the possession will not be held to have been thus interrupted or abandoned.

The instructions given seem not inconsistent with this view, but they were erroneous in naming ten years from the entry by Fugate as the period of limitation, when he took possession in 1843 or '44, before the limitation act of 1847. At the time he entered, twenty years' possession was necessary; and after the act of 1847, if the limitation of ten years is relied upon, it must be ten years after the passage of the act. (Callaway County v. Nolley, 31 Mo. 393; Billion v. Walsh, 46 Mo. 492.)

The plaintiffs claim that, even if there was no actual possession of the whole of the two eighty-acre lots, their ancestor held constructive possession by virtue of his actual occupation of a part, claiming to own the whole; and the court so in effect instructed the jury. This idea of constructive possession is confined to American courts, and was adopted in reference to the fact that in new countries the inclosures and improvements usually embrace only a portion of what actually belongs to the several farms. Hence, when one purchases a farm, although the title may ultimately prove defective, yet if he enter upon it in good faith and make improvements, or occupy those already made, his possession shall be construed to extend to the whole farm covered by his deed. The doctrine of constructive possession, which follows the title when there is no adverse possession, is applied to one who takes actual or corporal adverse possession under color of title, and he is held to be possessed of the contiguous land covered by the instrument under which he enters, and which he claims by virtue of such instrument. But such possession is never based upon a claim merely, and it has never been so held; there must be a deed purporting to convey the whole, or some proceeding or

instrument giving color and defining boundaries, as well as actual possession of a part.

This elementary principle was ignored by the court, probably from a misconstruction of a provision in the act of 1847, being the same as section 5, article 1, of limitation act of 1855. That section provides that "the possession of a part of a tract or lot of land in the name of the whole tract claimed, and exercising during the time of such possession the usual acts of ownership over the whole tract so claimed, shall be deemed a possession of the whole tract." Out of abundant caution, the revisors of 1865 inserted the words " under color of title" after the word "possession" in the first line, but it had never been considered that the possession referred to was a naked or tortious possession, or that the provision was other than a declaration of the existing law. In De Graw v. Taylor, 37 Mo. 310, the possession relied on was after the passage of the act of 1847, and the court held that without color of title the person taking possession could hold only the land actually occupied. So great a departure from just principle as to permit one who seizes land *mala fide*, with no color of title, not only to acquire by possession the land actually occupied, but also such of the surrounding lands which he may call his own, will not be presumed without the clearest legislative declaration.

4. Defendant complains that the jury was instructed to disregard the evidence of a sheriff's sale of the interest of James C. Fugate. It is enough to say that there was no evidence that the sheriff's deed was a lawful one, nor is the judgment and execution described with any clearness. Both parties labor under difficulties arising from the burning of the court-house and all the records of the county, and much liberality should be shown in receiving secondary evidence, but such secondary evidence must establish all essential facts. Evidence, however, of the acts and declarations of plaintiff Fugate in regard to this sale was offered, and though it was not sufficient to show title by such sale, yet it should be considered by the jury in inquiring whether there was a voluntary abandonment by him, if prior possession alone was relied upon.

As the case must be re-tried, it should be remarked that the defenses are inconsistent. Defendant first denies all right in the plaintiffs; insists that their ancestor never had any interest in the premises; and, second, asserts his own right as a purchaser of the interest of one of the plaintiffs derived from such ancestor. He cannot do both. He must content himself with contesting the plaintiff's title; or, if he relies himself upon it, must admit it, and show that in whole or in part it has become vested in him. In the latter case, as he only claims to have purchased the interest of one of the four heirs, he can hold only one-fourth of the estate, and should disclaim as to the rest, otherwise he will be held to have disseized the plaintiffs of the other three-fourths; for the rule is that the possession by one tenant in common is the possession of all, unless by denying their right, or holding adversely, his co-tenants are ousted. (Hoffstetter v. Blattner, 8 Mo. 276; 1 Washb. Real Prop., 3d ed., 556–7.) If, however, he chooses to rely upon his present possession and resists the whole claim, he should not be permitted to assert his right to the one-fourth interest. The answer being usually but a denial of the plaintiff's right, does not indicate the character of the defense, but the rule against inconsistent defenses should be applied to the admission of evidence. It should be further remarked that it was not incumbent upon the plaintiffs to show such title by possession as would prevail against the true owner. Mere possession, although less than ten years, and although the entry were tortious, is sufficient against a stranger (Sparhawk v. Bullard, 1 Metc. 95); for the law presumes, until the contrary appears, that those in possession are rightfully so. Nor is the same strictness of proof required against a stranger as against one who, but for the adverse claim, would be the owner; for in the latter case the proceeding, or document, or possession, amounts to a transfer of title, and the owner has a right to insist on all the requirements of the law. But a stranger has no right to be protected, and, though not estopped, has less interest in scrutinizing the claims of others.

In the case at bar, the mere possession of the ancestor will not avail the plaintiffs if it appears that they have voluntarily aban-

29—VOL. XLIX.

Fugate et al. v. Pierce.

doned the premises. Merely leaving them after the improvements were destroyed, *animo revertendi*, is not an abandonment; but if they were wholly given up with no intention of reclaiming them, then they are not wronged by the defendant's entry.

The judgment will be reversed and the cause remanded for a new trial. Judge Wagner concurs. Judge Adams absent.

[END OF FEBRUARY TERM.]