WILLIAM H. KENDRICK, APPELLANT, VS. JAMES F. LATHAM
AND IDA LATHAM, APPELLEES.

1. A certified copy of the record of a deed is not admissible in evidence as proof of the execution or contents of the original, if the record has not been made upon the evidence of execution required by the statute.

2. Where a referee admits a copy of a paper in evidence to the extent that it may subsequently be supported by testimony and further

52

testimony is introduced showing that the original was executed by the grantor named in the copy, and that the copy is a true copy of such original, the error, if any, of admitting the copy, is without injury to the party complianing of it.

3. Possession of land in this State is presumed to be under and in subordination to the legal title unless it appear that the land has been held and possessed adversely to such title for seven years before the commencement of an action to recover the same founded on the title.

4. Where a person enters upon land under a party not holding the true title, and afterwards takes a deed of conveyance from him, such entry will from the date of the deed be regarded as an entry under claim of title to the land described in the deed and in hostility to the true title and exclusive of any other rights.

5. A "forty" of land is not "a tract divided into lots," within the meaning of the fifth section of the statute of limitations of 1872, p. 732, McClellan's Digest, but may be regarded as "a known lot" under the fourth clause of sixth section of that act, and the improvement and adverse possession of a part thereof under claim of title to the entire "forty" founded upon a written instrument as being a conveyance of the "forty" is in law, both under and independent of any special provision of our statute, adverse possession for the same length of time as well of the part not cleared nor inclosed, as of the part actually improved and occupied.

6. Where there is privity between successive occupants holding adversely to the true title and continuously their successive periods of possession may be united to make up the time of adverse holding prescribed by the statute as a defence against such title, but there can be no tacking of possessions unless there is such privity.

7. Privity may be established between successive occupants by execution sale and a conveyance by the officer making it.

8. A Sheriff's deed conveying a prior adverse occupant's interest in the land to the succeeding occupant is not sufficient evidence to establish privity between them or connect their possessions, because it is not of itself evidence of the Sheriff's authority to sell. Judgment and execution must also be shown.

9. A Sheriff's deed is of itself, or unaccompanied by judgment or execution, a sufficient written instrument upon which to found a

claim of title to the premises described therein and start the running of the statutory period in favor of one entering under it.

10. No written instrument is necessary to establish privity between successive occupants pending the running of the statutory period in so far as a transfer of the land of which there is a *pedis possessio,* or actual as distinguished from constructive possession ; but as to the part of which there is simply constructive possession a written instrument is essential to privity, but it need not be a formal deed ; an instrument otherwise purporting to be a deed of conveyance but which has no seal is sufficient.

11. Though evidence improperly rejected by a referee appears in the appeal transcript, it cannot be considered by the appellate court in connection with other evidence which it was intended to support.

12. A recital in a Sheriff's deed that the sale was made on the day it bears date, "after duly advertising the same according to law :" *Held,* Without intimating an opinion as to the effect of an entire want of notice or a notice deficient in time or otherwise, to be, in the absence of proof to the contrary, sufficient evidence that the sale was legally advertised for thirty days as required by the statute.

13. Where there is nothing shown to the contrary it is to be presumed that a Sheriff's sale was made "at the court house door" in the proper county, as required by law, and at an appropriate hour.

14. In the absence of evidence to the contrary an alteration in a deed will be presumed to have been made contemporaneously with the execution of the instrument and properly.

15. The provisions of section twenty-one of Article XVI of the Constitution do not relate to the admission in evidence of other instruments than deeds and mortgages proved for record and of certified copies of the record of deeds and mortgages.

Appeal from the Circuit Court for Hernando county.

### STATEMENT.

Appellant sued appellees, James F. and Ida Latham, in ejectment to recover a piece of land containing thirty acres, lying in Hernando county, in the northeast quarter of the

southwest quarter of section 15, T. 24 S., R. 21 E., described as follows : beginning at the northwest corner of the northeast quarter of the southwest quarter of the section and running south three hundred and thirty yards, thence east four hundred and forty yards, thence north three hundred and thirty yards, and thence west four hundred and forty yards to the initial point. Defendant pleaded not guilty as to the following part of the land containing ten acres, viz : a lot beginning at the northeast corner of Annie Ravesies' ten acre tract at a stake and running west four hundred and forty yards, thence north one hundred and ten yards to a stake, thence east four hundred and forty yards, and thence south one hundred and ten yards to a point of beginning ; and as to the residue of the land, pleaded that they were not in possession of it. Appellant took issue on the pleas.

There was trial before a referee, who gave judgment in favor of the defendants. Plaintiff having appealed, has assigned as error, 1st, the admission as evidence for any purpose whatever of a certified copy of a deed from A. C. Sumner and wife to one C. S. Blackshear ; 2d, the admission of a deed from J. B. Mickler, Sheriff of Hernando county, to T. S. Coogler ; 3d, the admission of a deed from Annie M. Tomlinson to James F. Latham ; and 4th, in giving judgment in favor of the defendants upon the evidence shown by the record.

The plaintiff, Kendrick, claims title to the land under a lost conveyance of the east half of the southwest quarter of the above section of land, alleged to have been made to him by the Trustees of the Internal Improvement Fund of the State, on the 23d day of November, 1859.

The defendants offered in evidence an original record re-establishing a judgment rendered October 8th, 1870, and execution issued thereon on the 19th day of the same

month, in favor of Anderson Mayo, as administrator of T. H. Edrington vs. C. S. Blackshear and others in Hernando county Circuit Court for $120.62. The original judgment and execution had been destroyed in the burning of Hernando county records in September, 1877. The order re-establishing the same was made March 27th, 1879, by the Judge of the Fifth Circuit, the Judge of the Circuit of which Hernando county is a part, being disqualified.

Objections having been made by the plaintiff to the admission of these proceedings as evidence, they were rejected by the referee.

Defendants then offered in evidence a certified copy of a deed purporting to have been made by A. C. Sumner, January 15th, 1876, conveying the said east half of said quarter section of land to C. S. Blackshear in fee, and its admission in evidence was objected to on the ground that the record of the original deed was not legal ; that it was not duly authenticated for record and not competent evidence without proof of execution of the original, which objection being sustained, defendant " disclaimed any intention to show title by it, but only an incident to be supported by further testimony," and the plaintiff objecting on the ground that the copy did not show that the original was properly authenticated for record, the referee " held or admitted " it " only to the extent that it may be hereafter supported by evidence," and the defendant excepted.

Defendants then offered in evidence a deed from J. B. Mickler, Sheriff of Hernando county, dated October 6th, 1879, conveying to Coogler the east half of the quarter section, mentioned above, pursuant to a sale of the same made by him under the execution referred to above and issued on said judgment, said sale having been made at public auction on the day of the date of said deed, it being the first Monday in October, " after duly advertising the same

according to law," and said land being sold as the property of said C. S. Blackshear, Coogler being the highest bidder and the deed stating his bid and his payment of the same.

To the admission of this deed in evidence plaintiff objected, first, that the judgment and execution upon which it was based was not sufficiently proven as a predicate, and secondly, that the deed did not recite how long notice was published, or when, or in what county or State the sale took place, or that the sale was made at the court house door, or within legal hours of sale.

The action of the referee is as follows: Filed and offered in evidence January 25, 1888. Objected to by plaintiff. First objection sustained. Second overruled. Council on both sides except.

The record also shows a deed from Coogler and wife, dated December 22, 1881, conveying the half quarter section of land to Annie M. Tomlinson, and that the same was admitted in evidence " in so far as admissible under the circumstances of the case ; " and a deed from Annie M. Tomlinson to appellee, James F. Latham, dated May 1st, 1883, conveying to Latham " thirty acres of land, being the north part of the northeast (1-4) fourth of the southwest quarter of said section, describing it " the division line to run east and west."

The plaintiff objected to the introduction of the latter deed on the ground that certain erasures and interlineation on its face had not been satisfactorily explained. The consideration seems to have been expressed prior to the interlineations and erasures as follows : " For and in consideration of the sum of two hundred and forty dollars to be paid by the said Latham, the sum of one *at and before the ensealing and delivery hereof, the receipt whereof—do hereby acknowledge and thereof and forever discharge the said——her*

*executors and administrators."* This has been changed to read after the word " *one*," as follows, viz : " hundred and sixty dollars in lumber at $1.00 per 100 feet, and the sum of eight dollars in money due twelve months from this date." The words which we have italicised above have a line drawn through them, but they are still legible. The substituted words are interlineations.

The other facts of the case are stated in the opinion.

*Shackleford & Preston* for Appellant.

The facts as established by the record in this case are as follows :

On the 10th day of April, 1851, the NE¼ of the SW¼ of sec. 15, T. 24, S., R. 21, E., which embraces the land in controversy, together with other lands, was approved to the State of Florida, and on the 8th day of May, 1854, was sold by said State to Wm. J. Turner and certificate No. 852 was issued to him therefor. Said certificate was assigned for value September 10th, 1855, by the said Wm. J. Turner to William H. Kendrick, the appellant, and a deed was made to him by said State on the 23d day of November, 1859. The State Land Office at that time kept no record or copies of deeds issued and the original deed of Kendrick was lost without ever having been recorded, but the fact that such a deed once existed, its contents and loss was duly established by secondary evidence. Said Kendrick never conveyed said land to any one. On the 15th day of January, 1876, one A. C. Sumner and wife made what purports to be a deed, conveying said land, together with an adjoining forty, to one C. S. Blackshear, who by virtue of said deed entered into possession of the lands attempted thereby to be conveyed, but said deed was never properly acknowledged or proved for record, though it was

826 SUPREME COURT.

Kendrick vs. Latham and Latham—Argument of Counsel.

erroneously admitted to record. A certified copy of same offered in evidence by appellees and rejected by the court at first but afterwards admitted as "an incident to be supported by further testimony." There is no evidence that Sumner ever had any title to the land in controversy. On the 6th day of October, 1879, J. B. Mickler, Sheriff of Hernando county, executed a deed to said land, together with the other forty purchased by Blackshear from Sumner to T. S. Coogler, reciting a judgment rendered October 8th, 1870, in favor of Mayo, Admr., vs. C. S. Blackshear *et al.*, and the issuance of an execution thereon. Said Sheriff's deed and the judgment and execution were offered in evidence by appellees and rejected by the court for reasons that will appear from an inspection of the record. Coogler, the purchaser at Sheriff's sale, never was in actual possession of the land, but after his said purchase placed it in charge of an agent, who repaired the fence, set out some orange trees and had them cultivated and placed tenants on the place from year to year, though there were frequent intervals when there was no one on or in possession of the the land. On the 22d day of December, 1881, Coogler and wife conveyed said land by warranty deed to Mrs. Annie M. Tomlinson, who, however, did not take actual possession of the same until December, 1883, or January, 1884, when she moved on it, though at times she had tenants on it. On May the 1st, 1883, Mrs. Annie M. Tomlinson conveyed by warranty deed to James F. Latham the actual land in controversy, which, however, did not include any of the improved part. On the —— day of March, 1884, James F. Latham and wife conveyed said land by warranty deed to Mrs. E. Ravesies, formerly Mrs. Annie M. Tomlinson, which deed was offered in evidence by appellees and rejected by the court for reasons that will appear from the record. On the 1st day of November, 1884, Mrs. Ravesies

and husband conveyed said land by warranty deed to James F. Latham and Ida Latham, the appellees, a certified copy of which deed was offered in evidence by appellees and rejected by the court for reasons that appear in the record. On the 5th day of February, 1887, John C. Law, Clerk of the Circuit Court in and for the county of Hernando, and State of Florida, conveyed said land by tax deed to Annie Tomlinson, reciting a sale of said land for taxes on the 6th of March, 1882, for the taxes of 1881, which said tax deed was recorded on the 5th day of February, 1887. Appellant introduced record evidence contesting the validity of said tax deed. Appellees claim title to said land by virtue of seven years adverse possession by them and their grantors under the deed of J. B. Mickler, Sheriff, to T. S. Coogler as color of title, and the referee so found and decided. Appellant claims that the evidence does not warrant such a finding and decision and has assigned certain errors committed by the referee, which we will now discuss. In support error which we have assigned, to-wit: that the court erred in admitting as evidence a certified copy of a deed from A. C. Sumner and wife to C. S. Blackshear for any purpose whatever, we call the attention of the court to the fact that as appears from said certified copy, said deed was not proved for record as required by our statutes, in that A. C. Sumner, one of the grantors, never acknowledged the execution of the same and neither was it proved for record by either one of the subscribing witnesses, therefore it was not entitled to record and though informally recorded is not entitled to be treated as a registered instrument. Saunders vs. Pepoon & Olcott, 4th Fla., 465. This being true, sec. 21, Article XVI, of the Constitution of 1885, which provides for the admission of a certified copy of the record of a deed as evidence only when the original has been duly proved for record and recording ac-

cording to law, would exclude the certified copy offered in this case. It is true that the court below admitted it only as "an incident to be supported by further testimony," but in view of the constitutional provision cited above we do not see how it could be admitted for any purpose whatever.

In support of the 2d error assigned, to-wit: that the court erred in admitting the deed of J. B. Mickler, Sheriff, to T. S. Coogler as evidence after having rejected the judgment and execution upon which said deed was based, we beg to cite the following authorities: "To establish a title under an execution sale there must be shown, as against a stranger to the proceedings, a valid judgment and execution binding the estate of the defendant, in the judgment, and that the defendant had some title or interest in the property sold." Davis vs. Shuler, 14th Fla., 447 and 448 ; also see Hartley vs. Farrell, 9th Fla., 374.

" There must be proof of the judgment in order to derive title from a sale thereunder." Donald *et al.* vs. McKinnon, 17th Fla., 748.

" A Sheriff's deed is not admissible in evidence where no judgment or action on which it was predicated is shown." Anderson vs. Robinson, 75th Ga., 375.

In this cases the court below properly rejected the judgment and execution upon which said Sheriff's deed was based for errors and irregularities appearing upon their face and stated in appellant's objection to their admission, and also sustained the appellant's objection to the introduction or admission of the Sheriff's deed, but afterwards considered said deed and in his findings and judgment treated said deed as though it had been admitted in evidence.

In support of our third error assigned, to-wit : that the court erred in admitting as evidence a deed from Annie M. Tomlinson to James F. Latham without first requiring

the erasure and interlineations therein to be satisfactorily accounted for and explained, we call the attention of the court to the fact that the erasures and interlineations in said deed are of an important character, said erasures and altertions occurring both in the consideration named in said deed and in the description of the land conveyed, as will appear from an inspection of the record, we cite the following authorities : 1 Greenleaf on Evidence, sections 564 to 568 and notes.

In support of our last assignment of errors that the court erred in giving judgment for the defendants (appellees) on the evidence as shown by the record, we contend that the evidence shows that the appellant had a good and sufficient title to the land in controversy from the State of Florida, and that he never conveyed the same to anyone. This being true, the only way his title could be divested was by a forced sale of the same under due process of law or by someone entering into possession thereof and holding the same adversely for a period of seven years. The appellee's claim was based upon the latter, to-wit: seven years adverse possession. We contend that the evidence is not sufficient to maintain this claim. Even admitting that the Sheriff's deed to T. S. Coogler is sufficient upon which to have color of title, the evidence is not sufficient to ripen the claim of appellee's into a good title by adverse possession.

" To constitute a possession such as will bar the title of the legal owner, five elements must co-exist. It must be (1) hostile or adverse; (2) actual ; (3) visible, notorious and exclusive; (4) continuous, and (5) under a claim or a color of title.

I English and American Encyclopædia of Law, page 228, and authorities there cited.

We claim that these five elements did not co-exist and

that the evidence fails to show that the possession was actual, visible, notorious and exclusive and continuous.

"The doctrine of adverse possession is to be taken strictly and not to be made out by reference, but by clear and positive proof." Hart vs. Bostwick, 14 Fla., 178.

Also see Seymour & Simpson vs. Creswell, 18 Fla., 29 ; Ill. Central R. R. Co. vs. Houghton *et al.*, Book I, 1888, page 213 of Lawyers' Co-operative Reports. (Ill. Sup. Ct.) Thompson vs. Felton, 54 Cal., 547.

*Angus Paterson* for Appellants.

This case was brought by Kendrick against Latham, and was tried by a Referee.

It is similar to the case of Bell & Lockett vs. Kendrick, No. 138, on the docket.

The evidence that the plaintiff offers is a certificate from the Commissioner of Lands and Immigration, that a deed had been issued to him by the State many years ago, and oral testimony to prove the contents of the deed.

The defendants offered in evidence a deed from Sumner to Blackshear, (certified copy,) a deed from Mickler, sheriff, to Coogler, a deed from Coogler to Annie M. Tomlinson, and Tomlinson to Latham, the defendant, and proved possession under these deeds from 1876 to the commencement of this suit. The decision was for the defendant, and plaintiff took this appeal.

The plaintiff must depend upon the strength of his own title, and not upon the weakness of the defendant's. Hartley vs. Ferrell, 9 Fla., 374.

A certificate that a deed had been made is no evidence in an action of ejectment, the deed itself or a certified copy or an established copy, should be produced. A certified copy should be offered. 1 Greenl., Sec. 91.

Florida Laws, Act of 1875, chap. 2063, McClellan's Digest, p. 515, sec. 10, contemplates a copy certified to, and not simply a certificate that such a copy exists. McClellan's Digest, p. 514, Sec. 9, and page 740, Sec. 21.

The plaintiff did not make such a case as would oust a squatter, the only witness to prove the loss of the deed was Thrasher, and he proves nothing. See Record, page 89.

The defendant shows a complete chain of titles and possession under them, for more than seven years before the commencement of this suit, and could not be ousted even if the plaintiff had his deed, all properly executed, and recorded at the date which he claims that it was made, because his claim is barred by the statute of limitation. See R. pages 73, 74, 75, 76 and 77 W. W. Cockran's Evidence; Rec. pages 77, 78, 79, 80, 81 and 82 T. S. Coogler's Evidence; Rec. pages 68, 69, 70, 71 and 72 James R. Obery's Evidence; McClellan's Digest, page 731, section 3.

A certified copy of the deed from Sumner and wife to Blackshear, was the best evidence after it was shown that the original was lost. McClellan's Digest, page 514, section 8.

Sheriff's deed was properly admitted because the fact was so well established by other evidence, and also evidence of the loss of the records. Record, page 51.

Defendant shows a complete chain of titles, and possession under them, plaintiff shows nothing for upwards of fifteen years.

Defendant establishes his right without any paper title. McClellan's Digest, page 732, sections 7 and 8.

RANEY, C. J.: I. The certified copy of the record of the deed of conveyance from Sumner to Blackshear does not show that Blackshear ever acknowledged, or either of the subscribing witnesses ever proved the execution of the

original deed; hence the record of it on January 12th, 1878, by the Clerk of Hernando County Circuit Court, was illegal, and this being so, the certified copy was not admissible as such to prove either the execution or the contents of the original. It is a well established proposition of law that the record must be made upon the evidence of execution required by the statute to entitle a certified copy to be used as evidence in lieu of the original. Edwards vs. Thom., 25 Fla.; S. C., 5 So. Rep., 707 ; England vs. Hatch, 80 Ala., 247; Hines vs. Chancey, 47 Ala., 637.

The provisions of section 21, Article XVI, of the Constitution, embody this principle, as well as require that it shall appear that the original is not within the custody or control of the party offering the copy. Bell *et al.* vs. Kendrick, decided at this term.

The purpose of the referee in holding or admitting the certified copy only to the extent that it might be subsequently supported by evidence, as he did, was, it would seem, merely to permit such copy which had been " filed and offered in evidence," to remain on file before him to be used in case it should be rendered available to the defendant by further testimony ; and even though holding or admitting it to the extent indicated was, technically speaking, not proper practice, yet in this case we do not see that any harm has resulted from it to the plaintiff. Without further objection upon the part of the plaintiff, testimony was at a subsequent stage of the cause introduced to show that Sumner executed a deed conveying to Blackshear the land described in the copy, and the certified copy was testified to as being a true copy of such original, and thus made available to the defendant. It is only in connection with, and as a part of this oral testimony as to the original deed, that the certified copy can be regarded to have been considered by the referee, and in this connection we

think it was properly considered by him. Thompson vs. Nash, 15 Texas, 419.

II. Kendrick's conveyance from the Trustees of the Internal Improvement Fund of the east half of the southwest quarter of section 15, was made on the 23d day of November, 1859, or about twenty-seven years and four months before the commencement of this suit in March,1887. It does not appear, however, that he has ever parted with his title to the north half of this eighty. His conveyance of February 16th, 1860, to James Weeks, included the south half of the southwest quarter of the section, and consequently carried the south half of the above " eighty," but this did not affect his ownership of the north half, or " forty," in which the ten acres of the land now in controversy, are. There is no proof that Weeks ever occupied this forty; nor was it sold as a part of his estate by the commissioner under the order of the County Judge of Hernando county, or mentioned in such order.

As there has been no conveyance of the land in dispute, or the "forty" which it is a part of, by Kendrick, the defendant must rely upon adverse possession for the period of seven years under the statute of limitations.

Our statute of limitations declares that in every action for the recovery of real property or the possession thereof, the person establishing a legal title to the premises shall be presumed to have been possessed thereof within the time prescribed by law and the occupation of such premises by any other person, shall be deeemd to have been under and in subordination to the legal title, unless it appear that the premises have been held and possessed adversely to such legal title for seven years before the commencement of the action. Section 4, page 731 McClellan's Digest. See also Caro vs. Pensacola C. Co., 19 Fla.. 766 ; Tyler on Ejectment and Adverse Enjoyment, 102 and 852

*et seq.* Kendrick having shown title, the burden was upon the defendant to show adverse possesion for the statutory period. Wade vs. Doyle, 17 Fla., 522, 527; Sharp vs. Dauhgney, 33 Cal., 505.

The same statute provides, by its fifth section, upon the question of adverse possession as against the true title, that whenever it shall appear that the occupant or those under whom he claims, entered into the possession of premises under claim of title exclusive of any other rights, founding such claim upon a written instrument as being a conveyance of the premises in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the premises including in such instrument, decree or judgment for seven years, the *premises* so included shall be deemed to have been *held adversely*, except that where the premises so included consist of a tract divided into lots, the possession of one lot shall not be deemed a possession of any other lot of the same tract.

The chief purpose of this section is to provide that were the premises or tract covered by the written instrument, judgment or decree upon which claim of title is founded is not divided into lots, a continued actual occupation and possession of a part of the described premises for the specified period in the manner required b y law, shall be deemed to extend to the entire premises, or in other words, that such continuous actual occupation and possession of a part for seven years shall be *constructive and legal occupation* of the whole as it is described in the written instrument, decree or judgment.

The sixth section declares that " for the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument, or a judgment

or decree, land shall be deemed to be possessed and occupied in the following cases :

First, where it has been usually cultivated or improved ; or

Second, where it has been protected by substantial enclosure ; or

Third, where (although not enclosed) it has been used for the supply of fuel, or for fencing timber for the purpose of husbandry, or for the ordinary use of the occupant;

Fourth, where a known lot or single farm has been partly improved, the portion of such farm or lot that may have been left not cleared, or not enclosed according to the usual course or custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved or cultivated.

It is clear from the testimony that Blackshear occupied the land in the latter part of the year 1875. Even ignoring the presumption arising from the evidence that such entry was under Sumner, his possession from the date of his deed of conveyance from Sumner, January 15th, 1876, must be regarded as an entry under claim of title in hostility to the true owner, Kendrick, and exclusive of any other rights, and founded upon a written instrument as being a conveyance of the premises described therein. Tyler, 107, 108, 876; Jackson vs. Parker, 3 Johnson's Cases, 124 ; Jackson vs. Thomas, 16 Johnson, 293 ; Jackson vs. Newton, 18 *Ibid*, 355. From this date his entry became adverse to the true title. Of course there is nothing in the record indicating that his original occupation of the land was as the tenant of Kendrick, or in subordination to his title.

Blackshear having moved on the place in 1875, remained in possession until the fall of 1879. The testimony shows

that as early as 1869 one Martin put a small house either on this " forty " in question, or the one immediately south of it, constituting the south half of the eighty, for the purpose of putting a stock of goods in, which purpose, however, he did not carry out; and that in the same year one Jeffcoat did put a stock of goods in it and lived on the south side of the forty in controversy and cleared a small field and built and planted some orange trees and lived there three or four years and then left the place and went away.   There is nothing to show any privity between the possession of these parties or of either of them and Blackshear, even if it be that the former were anything than mere trespassers without claim of title.

Blackshear opened about two acres of land and fenced it with a pine rail fence and set out some orange trees, and cultivated some of the land in corn, and some in potatoes, and also made a workshop out of an old house.   His improvements were on both of the " forties," and the fence erected by him remained until it was repaired and "moved out," and was kept in a condition to keep stock out as a general thing.

The " forty " within which the ten acres in controversy lie is not " a tract divided into lots " within the meaning of the exception of the fifth section of the statute.   If the fourth clause of section six is to be taken as a limitation upon section four as an entirety, the forty may properly be regarded as " a known lot," within the meaning of such clause.   Reasoning upon the premises either that this fourth clause is, or that it is not to be so taken, our opinion is that the character of Blackshear's actual possession and improvements were for the time the possession lasted, such as to constitute an adverse possession of the entire forty, within the meaning of the act.   Even if the fourth clause mentioned controls, then his improvement and possession of

part of the " forty " were such as constituted adverse pos-
session as well and for the same length of time of the part
" not cleared or not enclosed " as of the part improved and
occupied.　Of course the possession was constructive as to
the part not cleared or improved.

The above provisions of the statute of limitations have
been in force in California and Wisconsin and New York,
having been enacted by New York in the year 1830, and
from that State were probably taken by Wisconsin and Cal-
ifornia.　In the States mentioned the words " or of some
part of said premises," occur after the word judgment
where it appears last in the fifth section, and in New York
and Wisconsin the expression " known farm or single lot,"
is used in the last clause of the sixth section in the place of
" known lot or single farm," in the same clause in Califor-
nia and Florida.　Wood's California Digest, 46 ; Revised
Statutes of Wisconsin of 1878, p. 1014, and *vide* 23 New
York, p. 25 ; Tyler, pp. 102-3.

Without entering upon the question of constructive pos-
session in the case of very large bodies of land of which but
a small part is cultivated, improved or enclosed, as in
Munro vs. Merchant, 28 N. Y., 1, and Thompson vs. Dur-
hans, 61 N. Y., 52, we are satisfied that there is nothing in
the size of a quarter of a quarter section of land to avoid
the application of the doctrine of constructive possession
either independent of the statute, or under it and consid-
ered as modified by the sections last set out above.　Bald-
win vs. Simpson, 12 Cal., 560 ; Langford vs. Poppe, 36
Cal., 73 ; Pepper vs. O'Dowd, 39 Wis., 338 ; Coleman vs.
Eldred, 44 Wis., 210 ; Tremaine vs. Weatherly, 58 Iowa,
615 ; Ellicott vs. Pearl, 10 Peters, 412; Barr vs. Gratz's
Heirs, 4 Wheaton, 213 ; Welborn vs. Anderson, 37 Miss.,
155 ; Kile vs. Tubbs, 23 Cal., 432; Rose vs. Davis, 11 Cal.,

133 ; Crispen vs. Hannavan, 50 Mo., 544 ; Watson vs. Mansell, 76 Ala., 600.

The possession of Blackshear did not continue seven years, and consequently we must consider other questions presented by the record.

Where there is privity between successive occupants holding adversely to the true title and continuously, the successive periods of possession may be united or tacked to each other to make up the time of adverse holding prescribed by the statute as a defence against such title, but this cannot be done if there is not such privity. If this were not the case, as says Thompson, J., in Schrack vs. Zubler, 34 Penn. St., 41, the first intruder might abandon his intention of holding adversely and leave the possession, and a succeeding one might enter and claim without authority a quality in the predecessor's possession which he had abandoned. Tyler, 912-917 ; Overfield vs. Christie, 7 S. & R., 173 ; Smith vs. Chapin, 31 Conn., 530.

Where one is in adverse possession of land and pending the running of the statutory period, the land is levied upon and sold by a Sheriff under an execution issued upon a valid judgment against him, and the purchaser at such sale enters into possession, such sale and the conveyance by the Sheriff is sufficient to establish privity between the defendant in the judgment and the purchaser. Tyler, 917 ; Scheetz vs. Fitzwater, 5 Penn. St., 126.

In the case at bar the referee rejected the evidence offered by the defendant to prove the execution and judgment upon which the Sheriff's deed professes to be founded. Though the record of the proceedings re-establishing the execution and judgment in favor of Mayo, as administrator of Edrington vs. Blackshear and others, is in the appeal transcript, they cannot be considered by us in support of the Sheriff's deed. This results from the simple fact that

they were never admitted in evidence in the case. That it may have been erroneously excluded, makes no difference. Teegarden vs. Carpenter, 36 Miss., 404.

The only evidence before us that can be relied on as establishing privity between Blackshear and Coogler, or Coogler's privity with Blackshear's claim of title under the deed from Sumner, is the Sheriff's deed to Coogler. A Sheriff's deed is not of itself evidence of that officer's authority to levy and sell. In England it has been held that proof of the writ of execution is sufficient. Doe vs. Marless, 6 M. & S., 113 ; Doe vs. Thom. 1 M. & S., 425 ; and so in Georgia, in Whatley vs. Newsom, 10 Ga., 74 ; and I am not satisfied that this was not the view of this court in Hartly vs. Ferrell, 9 Fla., 374 ; yet subsequent authorities hold that a valid judgment must also be shown ; Davis vs. Shuler, 14 Fla., 447 ; Donald vs. McKinnon, 17 Fla., 748 ; and this is said to be the rule in several States. Tyler, 529.

In Hester vs. Coats, 22 Ga., 59, 60, it is observed, and properly too, that although a mere Sheriff's deed may be enough to lay foundation for the statute to begin to run on, it is not, when unaccompanied with the judgment or execution, sufficient to connect a possession under it with a previous possession under the person named in it as defendant in execution. In the absence of proper proof of the authority of the Sheriff to levy and sell, his position as to the occupying defendant in execution is that of a trespasser. Privity between successive occupants will not be supported by a trespass. Moffit vs. McDonald, 11 Humph., 457.

Had the record of the proceedings re-establishing the lost judgment and execution been admitted in evidence, we sould, even under the rule announced in Davis vs. Shuler, and Donald vs. McKinnon, *supra*, hold, in view of the evi-

dence which that record contains, as shown by the plea to the petition, of the jurisdiction of the court of the person of the defendants in the action in which the judgment was rendered, that the Sheriff's deed was properly admitted in evidence, but as such record was not admitted, our conclusion is that the Sheriff's deed is not of itself sufficient to show privity between Coogler and the title under which Blackshear claimed.

The second objection made to this Sheriff's deed was, that it did not recite how long notice was published, or when, or in what county the sale took place, or that the sale was made at the court house door, or within the legal hours of sale, were properly overruled.

The deed states that sale was made at public auction on the day of its date, the sixth day of October 1879, " after duly advertising the same according to law." Without intimating an opinion as to the effect of an entire want of notice, or of a notice deficient in time, or otherwise, we are satisfied that the recital as to the publication of notice is, in the absence of proof to the contrary, sufficient evidence that the sale was legally advertised for the period of thirty days preceding the sale. Freeman on executions, sections 285, 286; and our conclusion is that where there is no showing to the contrary, it is to be presumed that the Sheriff sold at the "court house door," as required by section 11, p. 523 Mc-Clellan's Digest ; and that he sold at an appropriate hour, and in the county. It is not pretended that the sixth day of October, 1879, was not the first Monday in that month, and consequently a sale day.

The deed from the Sheriff to Coogler, notwithstanding what we have said above, is considered of itself, or unaccompanied by the execution or judgment, a sufficient written instrument, within the meaning of the statute, to sustain a claim of title and start the running of the period of

limitation in favor of one entering under it and claiming adversely or exclusive of any other rights. Beverly vs. Burke, 9 Ga., 440 ; Hester vs. Coats, *supra*. This being so, if there was an adverse holding within the meaning of the statute, by Coogler and those claiming under and in privity with him, for seven years before the commencement of this ejectment action, the judgment of the referee should not be disturbed.

Coogler took possession in 1879, after the Sheriff's sale of October 8th. It is unnecessary under the view we have to take of the case, to fix the precise time. Whether it was in October or December, the period of seven years could not expire till the corresponding time in the year 1886. On December 22d, 1881, Coogler conveyed the entire half of the quarter section to Mrs. Thomlinson, and on May 1st, 1883, she conveyed to J. F. Latham "thirty acres of the land, being the north part of the northeast (1-4) fourth of the southwest quarter of" said section, describing it.

It is apparent from the testimony that this thirty acres did not include any of the enclosed or cultivated land, although a part of the same "forty." Latham says he took possession after buying and held it and improved it until he sold it back to her and her husband, E. Ravesies, in the summer of 1884, she having prior to this time married Ravesies. In August of the same year Latham bought ten acres of the same thirty from Mr. and Mrs. Ravesies and improved it and moved on it in November, and has been on it ever since. On this ten acres, which is the land covered by the plea of not guilty, he says there were no improvements until he placed them there. We understand him to mean that he put them on it after his last purchase just mentioned.

It is clear that this ten acre piece of land is one of which there has been no enclosure, cultivation or *pedis possessio*,

842 SUPREME COURT.

Kendrick vs. Latham and Latham—Opinion of Court.

but the possession claimed of it, as by Blackshear and others down to Latham's possession after his purchase in 1884, is not actual, but constructive, as resulting from the actual enclosure, improvement and possession of the part of the quarter section enclosed. This being so, it was essential that there should be a sufficient written instrument establishing privity between Latham as grantor and Mrs. Ravesies as his grantee as to this ten acres. If he had sold without such an instrument, then the privity between him and her extended only to that part of the thirty acres actually protected by a substantial enclosure, or in fact usually cultivated or improved. Sections 7 and 8, p. 732, McClellan's Digest.

There is in the transcript a copy of an instrument bearing date March 30, 1884, by which, according to its terms, Latham and wife bargained, sold and conveyed to Ravesies and wife the thirty acres mentioned above. The instrument has no seal to it. There is also another instrument without seal, dated November 1st, 1884, by which Ravesies and wife, according to its terms, sold, conveyed and transferred to Latham and wife the same thirty acres. These instruments were offered in evidence by the defendants, and rejected by the referee, the former having been objected to by the plaintiffs on the ground that it was not sealed, and not evidence of title ; and the latter that it was not sealed and not admissible to record, and not evidence of title.

Though the decision of Simpson vs. Downing, 26 Wendell, 316, may seem to support the theory that a formal deed is necessary to keep up privity between successive occupants, except as to that part of the land actually enclosed, cultivated or improved, we prefer the position taken in Crispen vs. Hannavan, 50 Mo., 536, where a deed without a seal was held sufficient. See also Watts vs. Parker, 27 Ill., 224. Considering the office performed by the written instrument

in cases of adverse possession under the statute of limitations, we think that a formal deed is not necessary to a transfer pending the running of the statutory period.   Mc-Neely vs. Lasgan, 22 O. St., 32; Fugate vs. Pierce, 49 Mo., 441; Watson vs. Mansell, 76 Ala., 600; Clements vs. Hays, 76 Ala., 280; Cunningham vs. Fredotzen, *supra.*

These instruments, we may remark, are not deeds, as they are not sealed ; Blackstone's Con., Book II, p. 295 ; nor are they mortgages, and consequently they are not controlled by the provisions of section 21 of Article XVI of the Constitution, as to the admission of such instruments to record, or in evidence.    The mere fact, however, that they may not be admissible to record is no objection to their being used in evidence.    We do not say that they are not admissible to record under the statute, (McClellan's Digest. pp. 214-215,) but even if they are, we are inclined to think their execution must be proved as at common law to entitle them to be used in evidence.

Whether these instruments were admissibse or not, they were in fact not admitted, and cannot be considered by us as being in evidence.    Teegarden vs. Carpenter, *supra.* The former of these papers not having been admitted, the fact that Ravesies and wife may have taken actual possession of that part of the thirty acres of which Latham, when he sold to them, had actual, as distinguished from constructive, possession, still their doing so did not in the absence of an instrument of the character indicated, carry to them constructive possession of any part of which Latham had only constructive possession ; and of course when Latham surrendered to Ravesies and wife that of which he had actual possession, his constructive possession as to the balance of the thirty acres terminated, for the simple reason that actual possession of the part under the sixth section of the statute, or independent of it, is essential to constructive possession

of the balance of the land described in the original instrument under which the claim of title is made.   Cunningham vs. Fraudson, 26 Texas, 34; Chandler vs. Rushing, 38 Texas, 591; Cooper vs. Ord, 60 Mo., 420.

The deed from Mrs. Tomlinson to Latham, dated May 1st, 1883, was objected to on account of erasures and interlineations, as explained in the statement of the case.

In the absence of evidence to the contrary, an alteration will be presumed to have been made contemporaneously with the execution of the instrument, and properly made, if nothing appears to the contrary.   There was no error in overruling the objection, as there is nothing in the evidence, nor upon the face of the instrument as it appears in the transcript, to overthrow this presumption.   Stewart vs. Preston, 1 Fla., 10; Meikel vs. State Savings Institution of Chicago, 36 Ind., 355; 1 Greenleaf on Evidence, section 564.

The judgment is reversed, and the cause remanded for a new trial.