FAAAFE and UNA'I of Fagatogo, Plaintiffs

v.

SIOELI of Fagatogo, Defendant

No. 5-1938

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Asiapa" in Fagatogo]

August 12, 1938

ARTHUR A. MORROW, *Chief Justice;* PULETU; and MULI.

Heard at Fagatogo on July 26th, 1938. 

MORROW, *Chief Justice.*

Sioeli of Fagatogo had the land Asiapa in Fagatogo surveyed and pursuant to section 74 of the Codification, made application to the Registrar of Titles to have the land as surveyed registered as his individual property.

Faaafe and Una'i, both of Fagatogo, filed an objection to the proposed registration, claiming that the land was their individual property. Hence this litigation.

It appeared from the statements of the parties at the trial, and from the evidence, that the land was not matai land.

The Court listened with great care to the testimony adduced and has read very carefully a transcript of the testimony.

To establish his claim Sioeli introduced evidence that the land at one time belonged to Mailo; that Mailo about sixty years ago sold it to Taeu Patea, the father of Sioeli; that when Taeu Patea left Tutuila some 45 to 50 years ago for Upolu he left the land in possession of Mataafa and Taeloua, his wife, with a statement to them that it was the property of Sioeli; that Mataafa died when Sioeli was a small boy about eight years of age, and that Taeloua continued in possession for sometime after Mataafa's death and finally willed it to Sioeli.

 Apparently from the record of the testimony Sioeli had no personal knowledge of his father having given possession of the land to Mataafa with a statement that it was Sioeli's, and no other witness than Sioeli himself testified as to this matter. It appears to us that Sioeli's testimony is based on hearsay. He testified that his father in later years upon returning from Upolu had told him

(Sioeli) about giving possession to Mataafa and Taeloua with a statement that the land was Sioeli's. He testified also that Taeloua had told him the same thing. Sioeli did not claim to have personal knowledge as to the disposal of the land by his father. If the land was his (Sioeli's) already, Taeloua's reputed will would have no effect. The testimony of Sioeli being based on hearsay cannot be considered. Since Taeu Patea left for Upolu before Mataafa died and since he died when Sioeli, who is now 56, was about 8 years of age, the gift of the land to Sioeli, if there was such a gift, must have occurred prior to the establishment of the government in 1900. Prior to 1900 the transfer of land titles was governed by Samoan custom. But proof in 1938 of a gift of the land according to Samoan custom prior to 1900 requires testimony that is the proper kind according to the law, and testimony based on hearsay is not.

██ According to Sioeli's testimony, the land was not the property of Taeloua although she may have been in possession. Taking his testimony on this point at its face value any will she may have made to him of the property, either before, or after the establishment of the government would have no effect. A person cannot will what he doesn't have.

To establish their claim the objectors, Faaafe and Una'i, introduced evidence that the land at one time was the property of Mataafa and Taeloua, his wife; that Mataafa died leaving his interest to his wife; that she gave it to Taamu Maalona, the adopted son of Mataafa and Taeloua and a nephew by blood of Taeloua, and that Taamu Maalona died leaving the two objectors as his sole heirs.

Aleaga, who is related to neither of the parties to this action, has lived on land adjacent to Asiapa for the last 24 years. He testified that he had never seen Sioeli taking fruits from the land, and that he had no knowledge of Sioeli having lived on the land. Sioeli himself testified that

he left the land 31 years ago. Aleaga also testified that while he had been familiar with the disputed tract, it was Faaafe who had kept it clean; that as far back as 38 years ago he had seen Taamu Maalona, the father of Faaafe and Una'i, coming to the land and taking the fruits; that 30 years ago, when he had his own adjacent land surveyed, he had some argument with Taamu Maalona about the ownership of a coconut tree included by him in the survey; that Taamu Maalona at that time made the claim to the witness that Asiapa was his land; that Taamu Maalona and his children continued to take the fruits of the land until Taamu Maalona's death about seven years ago; and that Faaafe and her children have taken the fruits since; that Faaafe had made the claim to him that the land was hers. It appeared quite clearly from the testimony that Faaafe had given permission for the burial of a child on the land a few years ago and that the Taamu Maalona children had built a fale on the land, and expressly permitted others to do likewise. There was testimony that Sioeli had never had a fale on the land. Faaafe has given permission to others to put plantations on Asiapa. Valaile testified that he and his wife have lived in a fale on the land since 1934 with Faaafe's permission and without objection from Sioeli. It appears that Faaafe at one time instructed Valaile to clean up part of the land. Faaafe lived on the land for 15 years, having moved to another location some five years ago. The evidence shows that Taamu Maalona, through whom the objectors claim to have inherited the land, built a house on it which stood for about 10 years and that the house was taken down or destroyed about 17 years ago. It is clear to us from the evidence that Taamu Maalona and his true daughters, the objectors, have exercised exclusive dominion over the land for many more than 20 years and during all of that time have taken the fruits, and that Taamu Maalona claimed the land as his during that period up to

his death and that the objectors have continued to make the same claim since his death. There was no evidence that Taamu Maalona made a will. His two children, the objectors and his sole heirs, consequently inherited whatever rights he had in the land.

Taking the testimony as a whole we are convinced that Taamu Maalona and after him, his heirs, the objectors, have been in actual, open, notorious, continuous, visible, exclusive and hostile possession of the land for more than 20 years under claim of ownership. Under these circumstances the land belongs to the objectors. They have by the acts of their father and by their own acts acquired any outstanding title through adverse possession for 20 years. The possession of the ancestor may be tacked to that of the heirs so as to make up the 20 years required statutory period. *McNeely v. Langan,* 22 Ohio St. 32; *Sawyer v. Kendall,* 10 Cush. (Mass.) 241; *Fugate v. Pierce,* 49 Mo. 441; *Rowland v. Williams,* 23 Or. 515. Also see *Tiffany on Real Property,* Section 438.

In view of our ruling to the effect that Faaafe and Una'i have acquired any outstanding title through the operation of the doctrine of adverse possession for 20 years, it is not necessary to discuss the validity of any gifts and wills of the land that may have occurred regardless of who was the beneficiary of any supposed gift or will.

It was laid down in a case just recently decided by the High Court that actual, open, notorious, visible, continuous, exclusive and hostile possession of land for the statutory period of 20 years under a claim of ownership will operate to establish title in the possessor. *Salavea L. of Leone v. Ilaoa of Leone,* No. 2-1938. See also *Talo v. Poi,* No. 16-1937.

At the trial Faaafe stated that she and her sister Una'i were claiming the land as the property of both of them.

25

It is ADJUDGED, ORDERED AND DECREED that the land Asiapa as surveyed be registered as the property of Faaafe and Una'i as tenants in common, and as their individual property.

Costs in the sum of $25.00 are assessed against Sioeli, the same to be paid within 60 days.

The other Judges concur.