————o————

JOHN LONG, Plaintiff in Error, *vs.* THOMAS HIGGINBOTHAM, Defendant in Error.

1. *Land titles—Possession of part with claim of the whole—Adverse possession connected with deed.*—The doctrine of constructive possession which follows the title where there is no adverse possession, is applied to one who takes actual or corporeal adverse possession under color of title; and he is held to be possessed of the contiguous land covered by the instrument under which he enters and which he claims by virtue of such an instrument. But such possession is never based upon a claim merely. There must be a deed purporting to convey the whole, or some proceeding or instrument giving color and defining boundaries as well as actual possession of a part.

2. *Deeds—Grants from United States—What certainty required in.*—The same certainty of description is not required in deeds from the government to individuals, or between grantor and grantee, as in case of sheriffs' deeds and other proceedings *in invitum.* In the former, parol evidence is allowed to explain and identify and locate.

*Error to Washington Circuit Court.*

*G. J. Van Allen,* for Plaintiff in Error.

The deeds introduced showed color of title. (Ang. Lim., [5th Ed.] p. 408, and cases cited; Fugate vs. Pearce, 49 Mo., 441.) Possession had been shown under that color of title. (Crispen vs. Hannavan, 50 Mo., 536.)

*Reynolds & Relfe,* for Defendant in Error.

The "south fourth" of a quarter section gives no description at all. When such a description occurs the deed gives no color of title. (Long vs. Wagoner, 47 Mo., 179; Home vs. Williams, 51 Mo., 252; Clemens vs. Rannells, 34 Mo., 579; Campbell vs. Johnson, 43 Mo., 250.)

Napton, Judge, delivered the opinion of the court.

This was an action of ejectment to recover possession of a small portion of what is termed the South fourth of the Northwest fraction quarter of Section 10, Township 38, Range 3. The defendant admitted possession of so much of the tract claimed as was included in the South-east fraction quarter of the North-west quarter of said section 10.

The land in controversy was claimed to be a part of a tract of land of about 578 acres, alleged to have been originally purchased of the United States by John Smith, (T.) at what period does not appear; but at the date of a conveyance made by his daughter Ann White, in 1847, to F. J. Smith, it was surveyed by Eugene O'Mara, the County Surveyor of Washington county, as the "Bellefontaine Mines." This survey was made at the instance of said F. J. Smith or his agents, and said Smith about that time purchased 40 acres in section 16, making the whole tract about 618 acres. Smith and the Longs had been in possession of this tract ever since,

until about 20 months before this suit was brought, when the defendant put a tenant on the South-east fraction quarter of North-west quarter of section 10, and within the lines of the old survey.

There were three deeds given in evidence by the plaintiff,— one from Ann White to F. J. Smith in July, 1847,—one from F. J. Smith to W. Long in June, 1856, and the third from W. Long and wife to the plaintiff. In all these deeds the disputed land is called the South fourth of Northwest fraction quarter of section 10.

*The following plat shows the location of the land in dispute.*

A. B. C. D. O'Mara's Survey.     E. B. G. F. Land in controversy.
H. I. C. D. Sec. 9.     C. K. Madden Line.     A. D. 60 chains and 50 Links.

It appears from the plat of survey of O'Mara in 1847, which was in evidence, that from the North-east corner of section 16, which is also the South-west corner of section 10, the western line of an old survey, made doubtless before the government surveys, called the Madden survey, ran diagonally through the South-west and North-west quarters of this section and made them fractional. And the survey, made by O'Mara, commencing at the South-west corner of section 9, and running North sixty chains, fifty links on the line between sections eight and nine, was then run due east across

sections 9 and 10, till it intersected the West line of the Madden survey, and *thence down the said West line of the Madden survey* in a South-westerly direction till it reached the North-east corner of section 16, and thence to the beginning.

There is no dispute concerning any of the land in this survey except the claim of defendant to the 33 acres which is in the South-east quarter of the North-west quarter of section 10, outside or West of the Madden line. This land, is beyond dispute, included in the O'Mara survey of the Bellefontaine or Smith tract, as it was generally called.

There were three surveys of this Bellefontaine tract, made by three different county surveyors,—all at the instance of the plaintiff or those under whom he held. One in 1847, by O'Mara as heretofore stated, a second made by Sholer, in 1857, and a third in 1872 or 1873, by Will, the then County Surveyor. They all adopted the West line of the Madden survey as the East line of the Bellefontaine tract—and of course all include that part of the South-east quarter of the North-west quarter of section 10, which defendant claims.

From a correspondence with the Commissioner of the General Land Office, it appears that all the land embraced in the O'Mara survey has been patented to John Smith, (T.) under an entry at St. Louis, No. 16205, but at what date the entry was made or the patent issued does not appear. This correspondence was offered but excluded by the court.

The defendant who took possession of the 33 acres of land in dispute about 20 months before this suit was brought, derived his title from one Lancaster, who entered the South-east fraction quarter of the North-west quarter of section 10, in 1836, and had a patent issued in January, 1852. It is not claimed that he ever had any possession of it, until about two years before this action was commenced.

There was in 1866, an attempt by the defendant to have this South-east quarter of North-west quarter of section 10 surveyed—but the survey was not completed. When the surveyor reached the Madden line, the plaintiff was sent for and some conversation occurred about the titles, which is im-

material and the survey was abandoned. No trees were blazed or other marks made or corners established.

There is a mass of testimony in the record concerning possession and acts of ownership by plaintiff. The details of this evidence it is unnecessary to state. It was clear that the plaintiff or those from whom he derived possession had been in possession of this tract, called the Bellefontaine Mines or Smith tract, from 1847 up to the entry of the defendant in 1871 or 1872; had various buildings, fences, mineral diggings on different parts of the tract, and cut rails and saw-logs, &c., throughout the land. There is some conflict of testimony as to the extent and character of these acts of ownership on the specific piece of ground in dispute. There was an old race-track on it and no portion of it was enclosed and no buildings were on it, nor were there any diggings on it. There is evidence however, that occasionally the plaintiff or his employees cut rail timber on it. The defendant beyond doubt never had possession nor claimed any, until he took possession in 1871.

The plaintiff asked instructions to the effect, that if the court finds that the plaintiff, and those under whom he claims title, had actual possession under color of title of a part of the tract of land described in the deed from D. W. Long and wife, and claimed the whole tract continuously for over ten years, and exercised during that time the usual acts of ownership over the whole tract so claimed, then such possession shall be deemed possession of the whole tract; and if it is found that the S. 1-4 of the N. W. Qr. of Sec. 10 was included within the whole tract so claimed, the verdict must be for plaintiff.

The court refused the instructions—gave a verdict and judgment for defendant.

The theory upon which the court below tried this case appears to have been, that the descriptive words in the various deeds offered in evidence were ambiguous and uncertain, and therefore, so far as the South 1-4 of the N. W. Qr. of Sec. 10 was concerned, no title or color of title was shown—and that the surveys were erroneous, and therefore did not help the case of the plaintiff.

But we do not consider it material whether these descriptive words in the deeds were ambiguous and uncertain as to render them null so far as this particular part of the tract conveyed is concerned, or not. The plaintiff relied on a prior possession of about 24 or 25 years. The only question is, whether these deeds and surveys gave him a color of title sufficient to protect his possession. If the invalidity of the deeds is held to destroy all color of title, the doctrine of possession under color of title is destroyed also, for if the deeds were valid and conveyed title there would be no need for calling in the aid of a possession of any length of time or under any circumstances. The survey of 1847, purporting to be a survey of the Bellefontaine or Smith tract fixed the outer boundaries of that tract by an actual designation of its lines. This survey was made by the County Surveyor of the county, and was duly returned and filed and recorded in the office. Whether it erroneously included the S. E. Qr. of the N. W. Qr. of Sec. 10 within its limits is not a question on an enquiry into the question of possession. That it did so include the land in controversy is clearly shown and, indeed, not controverted.

There is no doubt of the general principle, that a party in possession of a part of a tract, claiming the whole, is considered in possession of the whole. The application of this principle to cases as they arise is more difficult. In Griffiths vs. Schwenderman, 27 Mo., 412, and in McDonald vs. Schneider, *Id.*, 405, this general principle was held not to be applicable in cases where both parties occupied a part of the same tract, claiming under adverse titles. But the decisions in those cases have no application to the present, in which it is conceded that the defendant was never in possession of the S. E. Qr. of the N. W. Qr. of Sec. 10, until just before the institution of this suit, and long after the possession of plaintiff had ripened into a title—supposing such possession to have been established.

The doctrine on this subject is correctly set forth by this court in Fugate, &c., vs. Pierce, 49 Mo., 447, thus: "The doctrine of constructive possession, which follows the title where

there is no adverse possession, is applied to one who takes actual or corporeal adverse possession under color of title, and he is held to be possessed of the contiguous land covered by the instrument under which he enters and which he claims by virtue of such an instrument. But such possession is never based upon a claim merely, and it has never been so held; there must be a deed purporting to convey the whole, or some proceeding or instrument giving color and *defining boundaries*, as well as actual possession of a part."

In the case now under consideration there were several deeds through which plaintiff claimed and held the Bellefontaine tract, including the land in controversy. But those deeds may be regarded, so far as this question is concerned, as too ambiguous to pass title or designate boundaries, but the survey made in 1847 under those deeds, pointed out the exact boundaries of the tract and included the land in dispute. If these deeds, taken in connexion with the surveys, did not give color of title, it is difficult to conceive what would. Had the patents to John Smith (T.) been in evidence and those patents contained the same description with the deed (which they doubtless did) no additional strength would have been added to plaintiff's possession. For a patent from the United States if the description of the subject was void for uncertainty, could have no more efficacy than a deed from A. to B. with the same want of apt words of description.

The law applicable to deeds from the government to individuals, and to deeds between parties grantor and grantee, is not so strict in its requirements of certainty in their description of the lands conveyed, as in sheriffs' sales and other proceedings *in invitum*. In the former, parol evidence is allowed to explain and identify and locate. Here no parol evidence is used for that purpose, but an authentic survey made by an officer authorized and appointed by law to make such surveys. And not merely the plat of survey as found in the proper office, but the survey on the land, the blazes on the trees, the corners, &c., all pointed out to any one who wanted information the exact exterior boundaries of the "Bellefontaine

Mines" or "Smith Tract." The east line having been fixed as identical with the west line of the Madden Survey, it was apparent, that the S. E. fr. qr. of the N. W. fr. qr. must be within the said survey of O'Mara. Nor is it material that such survey was wrong, in view of the question of possession. It was a *bona fide* possession beyond doubt held under a *bona fide* chain of title by deeds and surveys.

And to prove the *bona fide* character of this possession, we see no reason why the correspondence with the commissioner of the General Land Office at Washington should be excluded. It did not establish any title, it may be conceded, nor tend in that direction, but it served to explain possession by leading to the conclusion that the County Surveyor, O'Mara, actually surveyed the land designed to be conveyed by the United States. It will be borne in mind, that the Madden Survey with its West line running diagonally through the N. W. qr. of Sec. 10 made the sub-divisions of that quarter fractional—and it may be that the entry and patent of Smith (if there were such entries and patent) would by the number of acres called for have clearly shown that what was called the South 1-4 meant the South *end* of the fractional quarter— and would therefore properly include both the S. E. and the S. W. fr. quarters. This is merely conjectural, however, but if it should be the fact, then it would merely show, as is often the case, that the government sold the same land twice—in which event, of course the oldest title would prevail, there being no question of possession in the case.

But this case, as it was tried on the evidence, presented a mere question of possession under color of title—a question of fact which the court cannot undertake to decide.

The judgment must therefore be reversed and the cause remanded. Judges Vories and Sherwood concur. Judges Wagner and Adams absent.