ALEXANDER McELHINNEY, Respondent, v. JOHN KRAUS ET AL., Appellants.

### April 12, 1881.

1. In an action of ejectment certified copies of the records of ancient archives are competent.

2. The doctrine of constructive possession applies to one who takes actual possession under color of title; and, under that doctrine, he is held to be possessed of the contiguous lands covered by the deed under which he enters, and which he claims by virtue of that instrument, provided there is no actual adverse possession of any part of the tract.

3. Where there is a deed, though the description be indefinite, which purports to convey the whole, and the survey made by the grantee and the recorded plat describes the exact tract claimed under the deed, and there is some evidence of constant, continuous acts of ownership over the whole; that the recorded plat subdivides the tract is not conclusive that the actual possession maintained through one employed to warn trespassers off the whole tract, is possession of only the subdivision on which the house is situated.

4. In such a case it is for the jury to say whether he took possession of a part of the tract, intending to take possession of the whole, under that deed, and whether he exercised acts of ownership, openly and notoriously claiming, under that deed, the entire tract of contiguous lands purporting to be conveyed thereby.

Appeal from the Circuit Court of St. Louis County, Edwards, J.

*Reversed and remanded.*

Rudolph Schulenburg and Heyman Levin, for the appellants : It is error to admit in evidence a conveyance in which the description of the property is so indefinite and uncertain as to render it void. — *Vasques* v. *Richardson,* 19 Mo. 96 ; *Bell* v. *Dawson,* 32 Mo. 79 ; *Holme* v. *Strautman,* 35 Mo. 293 ; *Hardy* v. *Mathews,* 38 Mo. 121 ; *Campbell* v. *Johnson,* 44 Mo. 247. Plaintiff claiming title under Reuben S. Bacon's heirs, cannot question or impeach the decree rendered against them in the St. Louis Land Court, in collateral proceeding, but would have to do so directly. — Freem. on Judg. 130 ; *Freeman* v. *Thompson,* 53 Mo. 183 ; *Lenox* v. *Clare,* 52 Mo. 116 ; *Runpelt* v. *O'Brien,* 57 Mo. 570 ; *Ellis* v. *Jones,* 51 Mo. 180 ; *Jeffries* v. *Wright,* 51 Mo. 215. The instruction offered by the plaintiff and given is clearly erroneous. — *Draper* v. *Shoot,* 25 Mo. 197 ; *Eugate* v. *Pierce,* 49 Mo. 441 ; *Turner* v. *Hall,* 60 Mo. 271 ; *Leper* v. *Baker,* 68 Mo. 400 ; *Lynd* v. *Williams,* 68 Mo. 360 ; *Long* v. *Higginbotham,* 56 Mo. 245 ; *Norfleet* v. *Hutchins,* 68 Mo. 597.

A. McElhinney, *pro se :* The instruction complained of is substantially the same as one approved by the Supreme Court in *Turner* v. *Hall,* 60 Mo. 271. Surely, defendants' actual possession of one lot, of their own subdivision, indicates an adverse claim to no more than one lot. This is only the more obvious, because each of the lots constitutes a large farm. — *Leper* v. *Baker,* 68 Mo. 400 ; Tyler on Eject. (1877) 900 ; *Jackson* v. *Woodruff,* 1 Cow. 276 ; *Jackson* v. *Richards,* 6 Cow. 617 ; *Griffith* v. *Schwenderman,* 27 Mo. 412 ; *St. Louis* v. *Gorman,* 29 Mo. 593.

Bakewell, J., delivered the opinion of the court.

This is ejectment for one hundred and seventy acres of land, more or less, lying in the north-western corner of United

States survey 1956, bounded north partly by United States survey 909, and partly by lands of John Kraus ; east by lot two of Angelrodt's subdivision, formerly of Barth ; south by Duerak's ; and west by the boundary line of survey 1956. Elizabeth Bartman, the lessor of defendant, was made a codefendant at her own instance. The answer is, not guilty, and the Statute of Limitations. It was stipulated that the premises are in survey 1956, reported by Bates on February 2, 1816, confirmed to James Mackey under the act of Congress of April 29, 1816, surveyed in 1818, and returned to the recorder of land-titles on January 30, 1823.

Plaintiff introduced the following documentary evidence : An instrument in the nature of an exchange of lands, dated May 10, 1799, recorded in St. Louis County on July 15, 1847, in the archives, and being archive No. 1087. This instrument is executed by Jacques Mackey, commandant, etc., in consideration of certain lands conveyed to him by John Bell, and purports to convey to John Bell two hundred superficial arpens, situate on the upper part of the river Bonhomme, joining land of William Bell on the north line of all its depth ; being about twenty-five arpens deep by eight wide, and being a portion of the tract granted by the government to Mackey. Also archive No. 1084, dated November 2, 1803, recorded August 15, 1817, amongst the archives in St. Louis County, executed by John Bell, which purports to convey the land described in the next preceding instrument, to Leonard Farah. Also a deed, dated and acknowledged October 5, 1824, and duly recorded, by which Leonard Farah and wife convey to James Johnson two hundred arpens, French measure, on Wild Horse Creek, Bonhomme Township, St. Louis County, bounded north by Philip Belt, east by the heirs of James Mackey, south by Stephen Hancock, Sr., and west by parties unknown. Also, a deed from James Johnson and wife to James Bayer, dated and recorded in August, 1830, for a tract of one hundred and eighty-two and one-half acres on

Wild Horse Creek, Bonhomme Township, bounded north by James Bayer, west by public land, south by Stephen Hancock's heirs, and east by land claimed by B. C. Allister. The land is further described by courses and distances, from tree to tree and stone to stone.  A deed from James Bayer and wife to Reuben S. Bacon was then introduced, dated February 6, 1837, and duly recorded, for the same land described in the last deed.  Lastly, plaintiff offered a deed from the widow and four of the children of Reuben S. Bacon, to plaintiff, dated February 14, 1871.

George W. Bacon testified, on behalf of plaintiff, that he knew the land in controversy ; that it was the land described in the various deeds read ; that the witness was born in St. Louis County in 1820.  James Johnson lived on the land in controversy when witness was a boy.  James Bayer, after Johnson, cultivated the lot conveyed to him, but did not live on it.   After Bayer, Bacon cultivated it, and the land adjoining on the north, living on the latter.  Bacon left in 1838 or 1839, and, when he left, leased the land in controversy to one Lipscombe, for a term of three or five years.  Bacon has been dead twenty-five years.  After the lease expired, the land was not cultivated.  Only about twenty acres of the land in controversy were cultivated.  After leaving, Bacon never had actual possession.  His heirs lived out of the county.  They consisted of a widow, Mary Ann, who died about fifteen years ago, and of seven children : John, who died leaving one child ; Jane, who died leaving one child, Eugene Rule, not heard of since 1845 ; Charles ; Virginia, married to Ellison Hill ; Thomas ; Benjamin, not heard of for twenty-five years ; and Stephen.

Plaintiff also introduced evidence tending to show that, in February, 1871, he gave a three-years' lease of the land in question to one Davis, who took possession under his lease, built a log-house on the land, and fenced and cultivated twenty acres.  Davis, on September 15, 1871, delivered possession to the agent of Barth, who claimed the

land, and who paid him for his improvements. There was also evidence that the land is now in the possession of defendant Kraus, as tenant for Mrs. Bartman, under a lease at a rent of $75 a year.

At the close of plaintiff's case, an instruction in the nature of a demurrer to the evidence was overruled. Objections were interposed to all the documentary evidence.

We think that the court committed no error in refusing to take the case from the jury. The certified copies of the records of ancient archives were competent under the statute. Rev. Stats., sects. 2305, 2306, 2309; *Smith* v. *Madison*, 67 Mo. 694. We do not see that there is any such patent ambiguity in the conveyance from Mackey to Bell as must render the deed void. The description in the deed from Johnston to Bayer is certainly definite enough; and the testimony of George Bacon is, that the lot in controversy was successively in the occupation of the parties to these instruments, from Mackey to Bacon.

Defendants introduced in evidence a deed from the sheriff of St. Louis County to Alexander McAllister, dated May 16, 1825, conveying, under judgments and executions against the executors of James Mackey, deceased, all his interest in three thousand two hundred and sixty arpens on Wild Horse Creek in Bonhomme Township, being a part of four thousand four hundred and sixty arpens confirmed to Mackey; the property conveyed being bounded north-east by Graham and vacant land, north-west by the Missouri River and Colgan and others, and south by vacant lands. Also, a deed dated December 2, 1832, from McAllister and wife to Ernest C. Angelrodt, for the same property. Also, a deed dated July 8, 1858, from Angelrodt and wife to Robert Barth, for lots 1 to 10, both inclusive, containing one thousand two hundred and forty-one acres in the Missouri River bottom, near Lewis's Ferry, being the same acquired of McAllister, except three parcels conveyed before to Tyler, Coleman, and Oberman.

This property is sold according to a plat of E. C. Angelrodt's property. Deeds were also introduced tending to show that this property had been acquired by Elizabeth Bartman, in 1877, by foreclosure of a deed of trust upon the same, given in 1864 by Barth to her, to secure a loan of $18,600.

Defendants also introduced evidence tending to show that Angelrodt, in 1840, made a survey and subdivision of what he had not sold of the larger tract, subdividing it into ten lots, numbered from 1 to 10, which plat he had recorded; the lines having been run and corners staked off by his own direction. The land sued for was shown to be lot 1 of this subdivision of Angelrodt as marked on the plat. The lots in the plat are of different dimensions, ranging from seventy-one to nearly two hundred acres. Defendant introduced evidence tending to show that, before the sale to Barth in 1858, Angelrodt had a house built on lot 5, at a distance of about a mile from the tract in dispute, which house was occupied by his agent, who looked after the Angelrodt lands, watched the timber, and kept trespassers off; that Barth continued the same person in possession, and himself visited the property from year to year; that this overseer did, in 1865, notify a witness not to cut timber on a tract of eleven acres that had been sold to one Lipscombe out of lot 1, saying that it belonged to Barth; that, in 1866, Barth made another survey of the tract, re-establishing the lines of Angelrodt's subdivision. There was evidence tending to show that Barth paid taxes on the entire Angelrodt tract, including the premises in dispute, as agent of Angelrodt, and, after his purchase, in his own behalf, from 1842 to 1874, inclusive, except the year 1872, the taxes of which year were paid by plaintiff. Plats and surveys of the Mackey tract were in possession of Barth, as agent of Angelrodt, from 1842 until his purchase in 1858, and for many years after that, including a copy of the plats and notes of survey 1956 filed and re-

corded in the office of the surveyor of public lands in Illinois and Missouri. In 1859, the property was first assessed in lots. Before that date, the Angelrodt tract, including the premises in dispute, was all assessed together as a tract of from one thousand to one thousand and forty-two acres.

It also appeared from what was said by witnesses for defendant, that Reuben S. Bacon, in 1851, employed a man to make rails and to fence his lot, and went on the lot at that time for that purpose, and that the rails were made on the lot without interference; but the fence was not put up. There was no actual occupation of the particular lot "one" in controversy, from 1845 to 1871.

The court gave the following instruction at the instance of plaintiff. Other instructions, given or refused, we think it unnecessary to notice: —

· "Although the jury may believe from the evidence that the tract of land in controversy is part of an original tract of over three thousand acres of land confirmed by the United States government to Jacques (or James) Mackey, known as survey 1956, yet if the jury further believe from the evidence that the deed purporting to be from said Mackey to John Bell, bearing date the tenth day of May, 1799, a copy of which was read in evidence, is a genuine instrument of that date, executed by said Mackey, and that the premises therein described are the same premises here in controversy, then any possession by the defendant or any person under whom he claims, after said date, of any part of said original tract or survey, other than the very premises here in controversy, or some part of said premises, would not be sufficient actual possession of the premises here in controversy to support the defence of the Statute of Limitations, although such possession of such other part of said original tract or survey may have been under a claim of title to the premises in controversy with the part actually in possession."

We think this instruction was erroneous, and calculated

to mislead the jury.  An entry with color of title may be supported with less evidence than would be necessary to enable a mere intruder to defend himself under the Statute of Limitations.  What is an adverse possession is a mixed question of law and fact, and depends much upon the nature and situation of the property.  Under our statute (Wag. Stats. 917, sect. 5), the possession under color of title, of part of a tract in the name of the whole tract claimed, and exercising during the time of such possession the usual acts of ownership over the whole tract so claimed, shall be deemed a possession of the whole of such tract.  The doctrine of constructive possession applies to one who takes actual possession under color of title ; and, under that doctrine, he is held to be possessed of the contiguous lands covered by the deed under which he enters, and which he claims by virtue of that instrument, provided there is no actual adverse possession of any part of the tract.  And where there is a deed purporting to convey the whole, or some proceeding or instrument giving color, and defining boundaries, actual possession of a part may be possession of the whole.  The description in the deed to Angelrodt was not definite ; but the survey made by him, and the recorded plat pointed out the exact tract which he claimed under that deed, including the premises in dispute.  There was some evidence of constant, continuous acts of ownership over the whole tract called Angelrodt's subdivision. It is not pretended that defendants' grantors ever had actual possession of lot " one " of that subdivision, which embraces the premises in dispute.  We do not think that the subdivision of the tract by paper lines ought to be held conclusive against claim by possession and color of title to the whole tract surveyed by Angelrodt.  But this instruction virtually tells the jury to find against defendants' claim under the Statute of Limitations, if they believe the undisputed evidence in the case ; the actual possession requisite to support the title by limitation being confined by this

instruction to lot "one." The general principle, on the contrary, is that one in possession under color of title of a part of a tract claiming the whole, is considered in possession of the whole. If the description in Angelrodt's deed was ambiguous, and his survey incorrect, the question would still be, whether he took possession of a part of the tract, intending to take possession of the whole, under that deed, and whether he and his successors exercised acts of ownership, openly and notoriously claiming under that deed the entire tract of contiguous lands as passing under that instrument, the deed purporting to convey the whole. *Draper* v. *Shoot*, 25 Mo. 197; *Fugate* v. *Pierce*, 49 Mo. 441; *Turner* v. *Hall*, 60 Mo. 271; *Long* v. *Higginbotham*, 56 Mo. 245.

The verdict and judgment were for plaintiff. For the error in giving the instruction set out above, we think that the judgment should be reversed and the cause remanded. It is so ordered. All the judges concur.

