## R. B. BRADSHAW, Appellant, v. EDELEN et al.

### Division Two, March 6, 1906.

1. **PATENT: Island: Ownership.** An island in the Missouri river surveyed by the Government and in this way appropriated and reserved to it, in 1820, before the admission of Missouri into the Union, continued to be the property of the United States until patented in 1849.

2. ————: **Prima-Facie Evidence.** The patent is at least prima-facie evidence that all prerequisites of the law necessary to its issuance were complied with.

3. ————: **Description: Field Notes.** Field notes of Government surveys will control in ascertaining location even when the monuments established by the surveyor cannot be found.

4. ————: **Island: Existence.** It will be assumed where the Government surveyed an island in the Missouri river prior to the admission of Missouri into the Union and an island an-

swering its description can be located and identified from the field notes, that the island sprang up and formed before the survey was made.

5. **ACCRETIONS: Independent Sandbars: Conflict in Evidence.** Where defendants' evidence showed that they owned a long island in the river, that it began to wash away at its upper end and as it did so the alluvium was deposited against the lower end and thus the island was moved a half mile down the river, a small piece of five acres, against which the accretion first began, having never been washed away, and plaintiff's evidence was to the effect that the formation began as a sandbar in the river and as such was swelled into an island which extended towards the original island until it became connected with it, the appellate court will not undertake to settle this conflict in evidence. And a verdict for defendants, under proper instructions, will not be disturbed, for that necessarily found that the original island had not all washed away and that the made land was an accretion thereto.

Appeal from St. Louis City Circuit Court.—*Hon. Robert M. Foster,* Judge.

AFFIRMED.

*Frank K. Ryan* and *E. P. Johnson* for appellant.

(1)   The islands sued for existed prior to 1895, and in that year they were granted to St. Charles county for school purposes (sec. 8346, R. S. 1899), granting all islands belonging to the State then formed. They were surveyed, sold, patented and the patents recorded by said county, pursuant to secs. 8347, 8197 and 8198, Id., and sec. 8248, Id., makes them prima facie evidence of title.   The deed of his co-patentees to plaintiff gave him such a prima facie title to the whole of them, and the evidence sustains that title.   (2)   The burden is on defendants to disprove the title shown by plaintiff in order to sustain the verdict in their favor, and this they have failed to do.   Their only claim to do this is based on the patent to Laurentius M. Eiler, for an island in the Missouri river, issued May 1, 1849, on a

194Sup—41

certificate of entry, the date of which does not appear. The island is neither numbered nor named in it, nor does it embody any plat or refer to any survey. It merely conveys fractionals on islands in Missouri river of sections 30 and 31, township 48, range 7 east (all different from the land sued for), containing 59.79 acres. The surveyor for defendants testified that he could not locate it, and the evidence fails to do so. The objection to it on this ground should have been sustained and the patent excluded, thus ending the defense. Long v. Higginbotham, 56 Mo. 251. (3) The president had no authority, for lack of an authorized or any survey, tested by the evidence herein, to order the sale of the island patented to Eiler. The officers of the Land Department, for the same reason, had no authority to sell or issue a patent for the island. Hardin v. Jordan, 140 U. S. 400; Buxton v. Traver, 130 U. S. 235. And having been issued without authority, it is void and should have been excluded. Easton v. Salisbury, 21 How. (62 U. S.) 431; Sherman v. Buick, 93 U. S. 216; Knight v. U. S. Land Assn., 142 U. S. 176; Morris v. United States, 174 U. S. 243; Cummings v. Powell, 116 Mo. 477; Gibson v. Chouteau, 39 Mo. 564. (4) All land below high water mark on tide waters was held by the United States in trust for the future State, and when a State was admitted into the Union, the title to such land vested in the State. Pollard v. Hagan, 3 How. (44 U. S.) 221; Knight v. U. S. Land Assn., 142 U. S. 183; Shively v. Bowlby, 152 U. S. 26. The same doctrine has been applied to navigable rivers above tide water, and it is held that the title of the United States stops at high water mark on them, and that the beds of the streams and the land below high water mark belong to the States, which may concede them to the riparian owner, or otherwise dispose of them. Barney v. Keokuk, 94 U. S. 337; Packer v. Bird, 137 U. S. 671; Hardin v. Jordan, 140 U. S. 382; Shively v. Bowlby, 152 U. S. 27; Railroad v. Butler, 159 U. S. 87; Water Power Co.

v. Water Com'rs., 168 U. S. 358; Whitaker v. McBride, 197 U. S. 511; Cooley v. Golden, 117 Mo. 48; McBaine v. Johnson, 155 Mo. 202; Moore v. Farmer, 156 Mo. 48; State v. Longfellow, 169 Mo. 121. (5) In Missouri, a riparian proprietor owns only to low water mark. O'Fallon v. Daggett, 4 Mo. 347; Hahn v. Dawson, 134 Mo. 591; McBaine v. Johnson, 155 Mo. 201; Moore v. Farmer, 156 Mo. 47; State v. Longfellow, 169 Mo. 127. And the State owns the beds of navigable streams and islands that spring up in them. Cooley v. Golden, 117 Mo. 48; McBaine v. Johnson, 155 Mo. 201; Moore v. Farmer, 156 Mo. 48. (6) There is no evidence as to when the island in the Eiler patent sprang up, and the surveyor who surveyed the public lands of the United States in St. Louis and St. Charles counties in 1816 obeyed the latter part of the second clause of section 2396, Revised Statutes United States, and stopped at the Missouri river. The island might not have been formed then, nor until after the State was admitted into the Union. A certified copy of a document dated July 8, 1820, purporting to be a survey of Island No. 102, in said river, but not purporting to have been executed under any authority, or by any officer or surveyor, and not signed by anyone, nor approved, is produced in this case for the purpose of locating the Eiler patent. It is the thoroughly settled law that, when the Government surveys its land on a navigable river, and leaves an island on the river unsurveyed, and sells the land opposite the island, its title to the island is thereby sold and vests according to the law of the State, in either the State or the riparian owner. Whitaker v. McBride, 197 U. S. 512. And this rule holds good, notwithstanding the officers of the Land Department, after the original survey and sale, surveyed, sold and patented the island. Railroad v. Butler, 159 U. S. 88; Railroad v. Schurmeier, 7 Wall. (74 U. S.) 289. If mere neglect to survey an island thus vested title to it, *a fortiori,* the

exclusion of it from a survey by the latter part of clause 2, section 2396, Revised Statutes United States, and the continued failure of Congress to provide for such a survey or sale did the same, especially in view of the fact that this provision is now over one hundred years old.

*Hickman P. Rodgers* for respondents.

(1) An island in the Missouri river surveyed by the U. S. Government in 1820 was thus appropriated and reserved by it, and did not pass to the State of Missouri when the latter was subsequently admitted into the Union. Widdicombe v. Rosemiller, 118 Fed. 295. (2) A land patent from the United States Government is prima facie evidence that all steps necessary to its issuance have been regularly taken. Cramer v. Keller, 98 Mo. 279. (3) (a) Field notes of U. S. Surveys of public lands will control in ascertaining locations, even though the monuments established by the government surveyors can not be found. Carter v. Hornback, 139 Mo. 243. (b) Fractional sections necessarily have water for at least one boundary. Shelton v. Maupin, 16 Mo. 124. (4) The defendants are the owners of all accretions to the land patented by the United States to Eiler, to whose title they succeeded. McBaine v. Johnson, 155 Mo. 200. (5) Defendants' instruction properly defined accretions. Naylor v. Cox, 114 Mo. 232; Vogelsmeir v. Prendergast, 137 Mo. 271; Widdicombe v. Chiles, 173 Mo. 195. (6) This court will not interfere with the verdict of a jury even though the evidence conflicts, when there is evidence to support it and the instructions of the successful party correctly declare the law applicable to the case.

BURGESS, P. J.—This is an action of ejectment, begun in the circuit court of St. Charles county, for the possession of two islands in the Missouri river, in said county, one containing three hundred and twenty-

two and ninety-hundredths acres, being part of sections five, eight and nine, of township forty-seven, range seven, east, designated on the plat of the county surveyor of said county as "Nicholson's Island East of Slough," and the other island, containing one hundred and thirty-five acres, being part of sections five and six, same township and range, designated on said plat as "Nicholson's Island West of Slough," and stating the fractional quarter sections and the number of acres of land in each fraction. The petition is in the usual form in such cases. Ouster is laid July 28, 1902.

Defendants' answer was a general denial, and a plea to the jurisdiction of the circuit court of St. Charles county on the ground that the lands sued for are situated in St. Louis county. Plaintiff made reply to the answer by general denial. On application of defendants the venue of the cause was changed to the circuit court of the city of St. Louis, resulting, upon trial had before the court and jury, in a verdict and judgment for defendants. In due time plaintiff filed motion for a new trial, which being overruled, he saved an exception, and brings the case to this court for review.

The salient facts of the case, as disclosed by the record, are substantially as follows:

Plaintiff read in evidence, as color of title, a deed from David Morrell and Susan, his wife, by Barton Bates and Edward Haren, trustees under deed of trust, to David Nicholson, dated April 14, 1865, purporting to convey two parcels of land in St. Charles county, aggregating 3,167 acres, the larger tract being bounded on the south by the Missouri river. This larger tract originally included about one-half of the space subsequently occupied by "Nicholson's Island East of Slough," the bank of the river in 1871 running through said island, the then boundary of said larger tract before it began to wash away.

Swamp land patent, No. 264, St. Charles county,

to Jane and David Nicholson, Maggie Tracy and R. B. Bradshaw, dated April 8, 1902, conveying to them, for $270 said "Nicholson's Island West of Slough," stating fractional sections, etc.

Swamp land patent No. 265 in all other respects the same as last, conveying to same parties for $322.90 "Nicholson's Island East of Slough."

Warranty deed of said Jane Nicholson, widow of David Nicholson, David Nicholson, Maggie Tracy and John H. Tracy her husband, to R. B. Bradshaw, dated and acknowledged July 28, 1902, conveying to him their interest in said premises for $270.

The evidence for plaintiff tended to show that David Nicholson began to occupy and improve the tract of land described in said deed of David Morrell and wife by trustees to him, prior to 1876, by building houses and a saw-mill on it, cutting timber on and clearing land, placing tenants and paying taxes thereon, all under claim of ownership, continuously, until he died in 1880, and this occupancy and claim of ownership of it was kept up continuously by his administrator and then by his heirs to the time of trial, except portions of it that washed away and that they sold in the meantime.

David Nicholson died November 27, 1880, and left surviving him besides his widow, Jane, four children, David, Annie, Nellie and Maggie Nicholson. The latter was married to John H. Tracy. Annie and Nellie died in 1887, both unmarried. These islands were not there during David Nicholson's lifetime, but were formed since his death.

Defendant Edelen was on the land sued for when this suit was brought, and defendant Smith also in possession of it.

Prior to the conveyance from David Morrell, by trustees, to David Nicholson, there was an island in the Missouri river on the St. Louis county side, called Little's Island, above where the premises sued for are situate. The main channel of the river was between it

and the St. Charles county side. Little's Island was a long strip of land with the lower end of it narrow, its head being up the river, and the whole of it above where the premises sued for are located. After David Nicholson began clearing his said tract of land, about 1876, or subsequently, the bank of the river began to cave in rapidly and wash away, and continued to do so until quite a large portion of said tract disappeared and the river ran over the space it formerly occupied. The head of Little's Island also then began to wash away, and this caving in and washing away of the bank and island continued until the channel between Little's Island and the St. Charles county side filled up so that where boats used to land, there is now for about a half mile, timber and farming land. There was evidence that the island itself gradually washed entirely away, six years or more before this trial, and the main channel of the river changed to the St. Louis county side. That after Little's Island washed away a bar formed in there above, and bars were formed in the river below as it washed away, and they continued to form up to the time of this trial. That Nicholson's Islands were not formed on any part of where Little's Island had been, but in front of Nicholson's land. That prior to David Nicholson's death there was no island in the river in front of his property. As Little's Island washed away, bars formed below, willows grew on them, the water flowed between, and the bars finally became connected by settling between them. The caving in and washing away of the Nicholson land also formed bars in front of that land, and together they formed Nicholson's Islands. There are three or four of the formations, sloughs all over them, and a slough dividing the two islands. They had been forming and had willows on them in 1892. Before the Nicholson land caved in, the whole river there was channel, but after the caving in there was a number of channels, and boats sometimes ran up the slough between Nicholson's Islands

and the St. Charles county shore, and sometimes through the fields, but the main channel there after that was always on the St. Louis county side.

Carl Edwards, county surveyor, named the islands Nicholson's Islands in 1902, when he made the survey for school lands. Lines drawn horizontally from the present bank and Nicholson's tract include all of the islands in the two patents. The patents include the land in the islands, but there is a little sand-bar, covered with willows between them and the St. Charles county shore, not included in them. The main channel of the Missouri river has been on the south side of these islands ever since prior to 1892.

Plaintiff's survey of these islands was made from the St. Charles county side of the river. A range line from St. Louis county prolonged into St. Charles county won't correspond, and a survey made from the St. Louis county side would not agree with the figures in plaintiff's plat made from the St. Charles side. There would be a difference in them, but how much is not stated. Little's Island, or Island No. 102, is shown on certified maps of St. Louis county, but not on those of St. Charles county. At the time of plaintiff's survey, in January, when the water was low, there were little pools of water between the point of Nicholson's Island and Little's Island, or, rather, the sand-bar where the lower end of Little's Island had been. There was a slough between them, and in ordinary stages of water it always ran through, and when the water was at a stage of 12 or 13 feet, it covered the sand-bar, where the lower end of Little's Island had been. According to plaintiff's statement, which is by no means clear in this particular, "There is a bank, well defined, at the head of Nicholson's Island, 14 feet high, and the slough is between this bank and Little's Island, now a sand-bar. You could never drive across the slough between Nicholson's Island and the main land. The bank of the Missouri river, in 1871 (marked on plaintiff's plat of

Nicholson's Island), is taken from the record of surveys of Carl C. Ertz, county surveyor of St. Charles county, made in 1871, and according to that map, plaintiff's plat and extending line from St. Charles county, and best information the surveyor could get, Little's Island entirely washed away, and a sand-bar is located where the balance of it had been, which is under water at ordinary stages. Said surveyor never extended the St. Louis county lines to ascertain whether it was located there.''

The foregoing presents the plaintiff's case in chief, and the point insisted on by the defense is, that the defendants acquired title to Little's Island, or No. 102, and that it washed away at the head, and accretions formed to it at its foot. That there remains about five acres of the original island at the head of the island. That it always constituted one island and is owned in fee by defendants, and that there never was a Nicholson's Island there.

The evidence introduced by defendants tends to show that in the year 1820, about a year prior to the admission of the State of Missouri into the Federal Union, the United States government made a survey of an island in the Missouri river, not far from its confluence with the Mississippi, and which was designated "Island No. 102;" and field notes of said survey, bearing date July 8th, 1820, were found as a part of the records of the office of the Secretary of State of Missouri, a certified copy of which field notes was received in evidence. While somewhat ambiguous, said field notes would seem to show that the only monuments mentioned therein were trees. For instance, "Set a post on the margin of an island, corner of Th. secs. 30 and 31, T. 48, N., R. 7 E., from which a B. elder 10 in. dia. bears N. 14 E. 65 L. and a cotton 18 in. dia. bears S. 56 degrees 3 links. . . . 4.37 a cotton 20 in. dia.''

In 1849 the United States government issued to one Laurentius M. Eiler a patent ''for the fractionals on is-

land in Missouri river, of sections thirty and thirty-one, in township forty-eight, of range seven, east, in the District of Lands subject to sale at Saint Louis, Missouri, containing fifty-nine acres and seventy- nine hundredths of an acre, according to the official plat of the survey of the said lands returned to the General Land Office by the Surveyor General, which said tract has been purchased by the said Laurentius M. Eiler.''

The Eiler title, so obtained, became vested through mesne conveyances in John M. Little, James W. Little and Mary E. Brown, defendants in this case, the deed by which the said defendants acquired title being of date October, 1875, and describing said island as being ''through accretions supposed to contain 130 acres, more or less.''

The county surveyor of St. Louis county and his brother, also a surveyor, both testified that they located a part of the land in dispute, and which had for many years been known as ''Little's Island,'' as well as ''Island No. 102,'' within the bounds of said U. S. survey of 1820, and within the same township, sections and range described in said patent to Eiler; that a large portion of the upper, or westerly, part of the island had disappeared, and a large addition had been made at the foot, or easterly end thereof, making a contiguous body of land aggregating more than 500 acres, while but five acres of the ground as originally surveyed in 1820 remained at the time of the trial. These two surveyors described in detail the manner in which they identified the land by lines of survey, and from their testimony it would appear that the survey of 1820 connected Island No. 99 with the St. Louis county shore, Island No. 101 with No. 99, and Island No. 102 with No. 101, and that the same witnesses conducted their survey in the same manner.

Defendants introduced in evidence the following plat:

In connection with this plat an explanation appearing from the testimony in the cause is important, and it is one that runs all through the case. It seems that all surveys of the character herein involved are connected with a meridian line; and that in the meridian involved in this case there is a jog at the Missouri river to such an extent that a certain township, section and range in the river ascertained from the St. Louis county side would locate a point nearly a mile away from a point described by the same township, section and range numbers ascertained from the St. Charles county side of the river. And the United States surveyors and the surveyors who testified for defendants in this case all reckoned from the south side of the river, while the surveyors who testified for plaintiff and on whose surveys the county of St. Charles acted in the matter, reckoned from the north side.

Aside from the testimony of defendants' surveyors the identity of the land patented to Eiler is thoroughly established by testimony of John M. Little, one of the defendants, who testified that he knew the island in 1846; that he went there at that time with his father and cut timber; that his father afterwards purchased it and that it had been in the family until the time of the trial below. This witness had been on the land at frequent intervals, and produced receipts for taxes paid on the same by him and his family covering a continuous period from the year 1854 to the time of the trial, 1903. He also produced a redemption certificate, which was admitted in evidence, showing that the county of St. Louis sold the land involved herein on the 14th of October, 1864, to one B. A. Hill, for taxes, and that James R. Little (ancestor of said defendants), redeemed same from said purchaser on June 14, 1865.

Captain John M. Gillham testified for defendants that he had been steamboat master and pilot and otherwise engaged in running boats on the Missouri river

since 1858, and remembered Little's Island ever since that time. It was the first island west or above where the Burlington bridge now stands. All of plaintiff's witnesses identified Nicholson's Island (which plaintiff claims to have acquired by the action of the county court of St. Charles), as being the first island west, or above, the said Burlington bridge. Captain Gillham described the action of the river on Little's Island as wearing or washing away land at the head, or westerly end thereof, and by slow degrees adding to the foot, or easterly end, thereof, apparently moving the island down stream half a mile or more; and also testified that when he first ran the river at that point the channel was between Little's Island and the St. Charles county shore, but that along in the 70's the river took a change at that point, the channel going to the St. Louis county side, apparently moving Little's Island from the south to the north side of the river.

Two other steamboat captains of similar experience, gave similar testimony. Plaintiff's counsel in the examination of these witnesses, as well as in the cross-examination of other witnesses for the defense, endeavored to make it appear by their testimony that additions to the island were made by bars forming below, separate and distinct from the island proper, and afterwards attaching themselves thereto, and the witnesses adhered to the fact that these additions to the island were made by gradual accretions attached to the main land of the island when first appearing.

Christ Warnecks testified for defendants that he had known Little's Island since 1862; that he moved on it in 1871, lived there five years, built a house and stable on it, raised good crops and chopped 140 cords of wood off of it. That there were large trees on it at that time, some of which he had seen there six months before the trial below. This witness said that he had seen this island every month since 1871 and lived close to it all that

time. That the island which is there now, and which is called Little's Island, is the same island which he farmed more than 30 years before. This witness also testified to the washing away of the island at the head and the forming of additions thereto by gradual accretion. This was followed by corroborative testimony of ten or twelve citizens of St. Louis county who lived in the immediate vicinity.

The evidence shows that trees of large size, and ancient, bulky, blackened stumps were in the cornfields on the island, all of which trees and stumps were within the knowledge of nearly all of defendants' witnesses, and in existence on the land within a month of the trial. Furthermore, there is testimony in the case that some of these trees were sycamores and of slow growth, and that one of them, measuring over 11 feet in circumference, was a large tree when defendants' witness Brown was a small boy.

At the conclusion of the evidence the plaintiff asked the court to give the following instructions:

"1. The court instructs the jury that if they believe from the evidence that Little's Island was lost by being entirely washed away by the waters of the Missouri river, and that afterwards an island or sand-bar formed where Little's Island stood, and that said sand-bar or island, or the accretions, if any, thereto, is the land in controversy, still this will not defeat plaintiff's right to recovery.

"2. The court instructs the jury that if you find from the evidence that a sand-bar or island formed in the Missouri river opposite or below Little's Island, and that the waters of the Missouri river ran around said island or sand-bar for any considerable length of time, and that the defendant is occupying said island, or islands or sand-bar thus formed, then such island or sand-bar is not an accretion to said Little's Island, although the jury may find from the evidence that such

sand-bar or island afterwards was connected with said Little's Island or any part thereof, and your verdict must be for the plaintiff.

"3.    The court instructs the jury that if you believe from the evidence that the land in controversy is an island, or islands formed in the Missouri river, and not Little's Island, or an accretion thereto, as explained to you in other instructions, and that said land was sold in the county of St. Charles to plaintiff, and his grantors, then the plaintiff is entitled to recover and your verdict must be for the plaintiff.

"4.    The jury are further instructed that if they believe from the evidence that Island No. 102 or Little's Island washed away, then defendants and those under whom they claim lost all claim that they may have had to said island and the land that formed the same, notwithstanding the jury may believe from the evidence that the land or some portion thereof formerly composing said island was precipitated from the water of said river and settled upon or became attached to a formation of land below it in said river, and that the latter formation now forms a portion of the land described in the petition of plaintiff.

"5.    If the jury believe from the evidence that there is and has been continually a slough or channel of the Missouri river between the land in controversy and Little's Island, then the plaintiff is entitled to recover and your verdict must be for plaintiff.

"6.    The jury are further instructed that the defendants have not proved any title to the premises described in the petition of plaintiff.

"7.    The jury are instructed that under the pleadings and evidence in this cause they will find a verdict for the plaintiff."

The court refused each and all of said instructions, to which action of the court in refusing said instruc-

tions and each of them the plaintiff at the time excepted.

The plaintiff further asked and the court gave to the jury the following instructions:

"8.   The jury are instructed that under the evidence in this cause the land described in the petition of plaintiff is situate in St. Charles county.

"9.   The jury are further instructed that Island No. 102, or Little's Island, in the Missouri river, was in St. Louis county, and that if they believe from the evidence that said island was entirely washed away, then defendants, and those under whom they claim, lost all claim they may have had to said island.

"10.   The jury are instructed that the Statute of Limitations did not run against the State of Missouri or St. Charles county, and that defendants did not acquire any title by any possession they may have had of the same to any portion of the land sued for, as against the patents for the same issued by St. Charles county and read in evidence by plaintiff.

"11.   The jury are further instructed that if they further believe from the evidence that the land described in the petition herein is an island or islands formed in the Missouri river, below Island No. 102, or Little's Island, or below where it was formerly situated, then the title to the same vested in the State of Missouri, and the swamp land patents, signed by Vic D. Dierker, presiding judge of the county court, and the deed from Jane Nicholson, David Nicholson, Maggie Tracy and John H. Tracy, her husband, to R. B. Bradshaw, read in evidence by plaintiff, vested the legal title of the land therein described in said Bradshaw.

"12.   The court instructs the jury that if they believe from the evidence that the land in controversy was not formed by accumulations of soil, slowly and imperceptibly washed up or deposited against the lower end of Little's Island; but that said land was formed by sand-bars forming in times of high water in the river,

below, near or contiguous to Little's Island, and by deposits of sand, sediment and soil carried on said bars by succeeding floods said sand-bars were transformed into Little's Island, or by waters of the river receding therefrom, then defendants did not acquire any title to the land so formed, and your verdict must be for the plaintiff.

"13. The jury are instructed that accretions to land can be formed only by gradual and imperceptible deposits from the river, the progress of which cannot be observed from day to day, but only in considerable periods of time, or by a like gradual and imperceptible recession of the water of the river, and they are therefore instructed that if they believe from the evidence that sand-bars were formed in times of high water in the river either contiguous to or near Little's Island, that subsequently became land attached to said island, that such land so formed is not an accretion to said island and defendants did not acquire any title thereto by reason of any title they may have owned to said island.

"14. The jury are instructed that although they may believe from the evidence that the land lying west of or up the river from the line marked slough on the plat of Nicholson's Island, read in evidence by plaintiff, was a part of the original Little's Island or of accretions thereto formed by gradual and imperceptible deposits from the river, yet if they further believe from the evidence that the land began to form east of or down the river from said line marked slough on said plat, and that the same was, at the time it began to form, separated by a channel or slough of said river through which water flowed at seasons of low water, which channel or slough gradually filled up, then the land formed east of or below said line marked slough on said plat was not an accretion to said land lying west of or above the same on said plat, and the jury will find a verdict for plaintiff

194 Sup—42

for all the land lying east of or below said line marked slough on said plat.

"15. The court instructs the jury that the patent of the county of St. Charles to plaintiff and his grantors, is prima-facie evidence that the title to the land therein described was in the county of St. Charles, and the introduction of said patent in evidence made out a prima-facie case for plaintiff, and the burden is upon the defendants to overcome such prima-facie case by proving to the satisfaction of the jury that the land in controversy is Little's Island, or accretions thereto, as explained to you in other instructions.

"16. The jury are further instructed that if they find a verdict for plaintiff, they will assess his damages at any sum, not exceeding three hundred dollars, they may believe from the evidence is the rental value of the premises they find he is entitled to recover, from the 29th day of July, 1902, to the present time, and also find what they may believe from the evidence is the monthly value of the rents and profits of said premises in a sum not exceeding twenty-five dollars."

Over the objection and exception of plaintiff, the court, at the request of defendants, instructed the jury as follows:

"1. The court instructs the jury that if you believe from the evidence that the defendants, John M. Little, James W. Little, and Mary E. Brown, are the same persons described in the deed from Elizabeth Little and introduced in evidence, then they became owners of the land described in the patent from the United States to Eiler, also introduced in evidence in this case; and if you further believe from the evidence that such land was in the form of an island in the Missouri river, then the boundaries of said land extended in each direction to the water's edge, and all new land or soil, which you believe from the evidence may have been added to such island by gradual accretion to its shores, or by the

gradual recession of the waters of the river from its shores, became a part of such island and also became the property of said defendants, even though such accretions and new land so formed and added to said island extended over and included portions of that territory where land owned by Nicholson had formerly been located; provided you also believe from the evidence that said land of said Nicholson located in said territory as above described had been washed away by the river to the level of the river's bed, and to such extent that the channel of said river flowed over the same locality occupied by said portions of land of said Nicholson prior to the formation of said accretions and new land.

"And if you further believe from the evidence that the land in dispute in this suit is made up of land described in said patent from the United States goverment, or any part of same, and new land gradually added thereto by accretion or recession, as above described, then the plaintiff acquired no title or right of possession to the land in dispute by reason of the patents to same made by the county of St. Charles or its officials, and your verdict should be for defendants."

Plaintiff claims that the islands sued for existed prior to the year 1895, but that they were not surveyed or numbered and could not be located, and that having been formed in a navigable stream, they belonged to the State; that by the act of 1895 (Laws 1895, p. 207; sec. 8343, R. S. 1899), they were granted to the counties in which located; that the lands in question are located in and belonged to St. Charles county, and by sales thereof by the county court of said county to Jane and David Nicholson, Maggie Tracy and R. B. Bradshaw, and patent issued to them by said county in pursuance of said sale, they acquired the legal title to said "Nicholson's Island West of the Slough." That the same is true with respect to "Nicholson's Island East of the Slough," which was sold by said county to the same

persons, and that as plaintiff acquired by deed the interest of Jane Nicholson, widow of David Nicholson, Dora Nicholson, Maggie Tracy and John H. Tracy, her husband, he is the owner of the legal title to said land and prima-facie entitled to its possession. The argument is that under the state of facts recited, the burden is upon the defendants to disprove the title shown by plaintiff in order to sustain the verdict, and that they have failed to do this. That their only claim to do this is based on the patent issued May 1, 1849, to Laurentius M. Eiler for an island in the Missouri river, on a certificate of entry the date of which does not appear. That the island is neither numbered nor named in it, nor does it embody any plat or refer to any survey, but merely conveys fractionals on island in the Missouri river of sections thirty and thirty-one, township forty-eight, range seven, east, containing 59.79 acres, and that this is not the land sued for; that the surveyor, testifying for defendants, stated that he could not locate it, and the evidence fails to do so, and that the patent should have been excluded. In support of plaintiff's position he cites the case of Long v. Higginbotham, 56 Mo. 245; but it is said in that case: "The law applicable to deeds from the Government to individuals, and to deeds between parties grantor and grantee, is not so strict in its requirements of certainty in their description of the lands conveyed, as in sheriff's sales and other proceedings *in invitum*. In the former, parol evidence is allowed to explain and identify and locate." In the case of Widdicombe v. Rosemiller, 118 Fed. 295, it is said: "Island No. 42 [in the Missouri river] was surveyed by the general government, and thus appropriated and reserved by it, in 1820, before the admission of the State into the Union. It and the control of the river never passed to the State under the act of admission. It continued to be the property of the United States until it was patented in 1896 to this plaintiff." The field notes of the United States survey of Island

No. 102, of date July 8, 1820, a certified copy of which was introduced in evidence by defendants, clearly established that Little's Island was surveyed by the United States government prior to the admission of this State into the Union, which occurred August 10, 1821. The weight of the evidence shows that Little's Island and Island No. 102 are one and the same. The island in question, having been surveyed by the general government, and in this way appropriated and reserved by it, in 1820, before the admission of the State into the Union, continued to be the property of the United States until it was patented to Laurentius M. Eiler. A patent issued by the United States government is at least prima-facie evidence that all prerequisites of the law, necessary to its issuance, have been complied with, [Cramer v. Keller, 98 Mo. 279.] It has also been held that field notes of United States surveys of public lands will control in ascertaining locations, even though the monuments established by the government surveyor cannot, as in this case, be found. [Carter v. Hornback, 139 Mo. 238; Minter v. Crommelin, 18 How. 87.] There was some difference between the evidence of the surveyors who testified in the case as to the location of the island in question, owing to the fact that the township and range lines south of the Missouri river which run north from the south, and the lines north of the river, south from the north, seem to vary from one-half mile to a mile. But the Elbring brothers, surveyors, who testified for defendants, located the land described in the government patent to Eiler as being within the island, township, range and sections described in said patent, and as no other land was located within the same, this testimony could have had no application to any other island. While the evidence shows that the principal part of Little's Island washed away at its head there were several acres of its lower end which had not washed away, and to which accretions gradually formed; so that its identity was not entirely destroyed.

Nor do we think it a matter of any consequence that Surveyor Elbring did not find the monuments mentioned in the government survey, as they were simply trees, and would necessarily, in so many years, undergo so many changes as to place them beyond recognition. There was an abundance of evidence tending to show that the accretions to the lower end of Island No. 102, or Little's Island, were gradual and imperceptible, and that the land in possession of the Little family is in fact but one island. It is true there was evidence on the part of the plaintiff which tended to show that the accretions at the lower end of the island were occasioned by sandbars forming there, which afterwards became connected with the island, but upon this question the evidence was conflicting and the weight thereof for the consideration of the jury.

Plaintiff's case seems to rest entirely upon the proposition that Little's Island was washed away. Unless this was so, from our point of view, the defendants, having through mesne conveyances succeeded to the title of the patentee, Laurentius, M. Eiler, became the owner not only of the island but also all accretions to any part of it remaining since the time of the Government survey. That Little's Island had not, up to the time of the trial at least, been entirely washed away is indicated by the trees and stumps of apparently more than fifty years of age standing in the corn fields. The idea that a slough ran between "Nicholson's Island West of the Slough" and "Nicholson's Island East of the Slough" cannot be correct if, as contended by plaintiff, Nicholson's Island and Little's Island were one and the same. While the evidence shows that there was a ravine in Little's Island, that did not have the effect of dividing it into different tracts. According to the evidence, some of the large stumps of which we have spoken were situated in this ravine or "slough."

Plaintiff contends that there was no evidence as to

when the island described in the Eiler patent sprang up; but we think that, as the record shows that in the year 1820, the United States government made a survey of an island, designated as "Island No. 102," in the Missouri river, not far from its confluence with the Mississippi river, field notes of which survey were afterwards found as a part of the records of the office of the Secretary of State of this State, and a certified copy thereof read in evidence in this case, there can be no question that the island sprang up or was formed before it was surveyed, and, therefore, before Missouri was admitted into the Union of States.

We find no error in the instructions given at the instance of the defendants or in the refusal of the court to give the instructions asked by the plaintiff. Taking the instructions given as a whole, they presented the law of the case very fairly to the jury.

The judgment is for the right parties, and should be affirmed. It is so ordered.

All concur.